Robert L. Starr (183052)
robert@starrlaw.com
Adam M. Rose (210880)
adam@starrlaw.com
Theodore R. Tang, Esq. (313294)
theodore@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23901 Calabasas Road, STE #2072
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Calabasas Luxury Motorcars, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC; MERCEDES-BENZ FINANCIAL SERVICES USA, LLC and DOES 1 through 10,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNFAIR COMPETITION LAW** |

## PARTIES

1. Calabasas Luxury Motorcars ("Plaintiff") is a California corporation, with its principal place of business located in Los Angeles, California.

2. Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware limited liability company with its principal place of business located in Sandy Springs, Georgia.

3. All acts and omissions of MBUSA's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the

course and scope of their duties and MBUSA is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

4. Defendant Mercedes-Benz Financial Services, LLC ("MBFS") is a Delaware limited liability company with its principal place of business located in Farmington Hills, Michigan.

5. All acts and omissions of MBFS's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and MBFS is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

6. Plaintiff is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 10, inclusive ("Doe Defendants"), and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the fictitiously named Doe Defendants has participated in some way in the wrongful acts and omissions alleged below, and is liable to Plaintiff for damages and other relief to which Plaintiff is entitled.

7.

## JURISDICTION AND VENUE

8. This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C § 1332(a).

9. This is a civil action in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. At least one member of the California Class is a citizen of a State different from at least one Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

///

11. The claims asserted by the putative class, when aggregated as required by 28 U.S.C. § 1332(d)(6), exceeds the sum of $5,000,000 within the meaning of 28 U.S.C. § 1332(d)(2).

12. The number of members of all putative classes alleged herein exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

13. The primary defendants are not States, State officials, or other governmental entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

14. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this claim occurred in the Central District of California.

15. This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under statutory or common law pursuant to 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative facts such that adjudication of both state and federal claims furthers the interests of judicial economy.

## FACTUAL ALLEGATIONS

16. As a result of the SARS-CoV-2 ("COVID-19") pandemic, there has been a severe disruptions to the global supply chain of motor vehicles.

17. This major squeeze on vehicle production over the past 18 months has resulted in a drastic shortage in supply while, at the same time, consumer demand for vehicles has dramatically risen. Unsurprisingly, this confluence of low supply and high demand has catapulted used and new car prices to record highs.

18. This unprecedented demand for vehicles has created a situation where lessees whose leases terms have not yet expired have found themselves in possession of a vehicle whose market value was worth significantly more than the amounts owed on their respective lease, as calculated by Civil Code Section 2987. In layman's terms, as a result of high demand, these vehicles did not lose much if any value, and there is equity in these lease contracts.

19. As a result of this increased equity, consumers are recognizing that they are able to trade-in or sell their vehicle for a significant profit.

## THE STRUCTURE OF LEASES & VEHICLE TRADE-INS

20. In structuring a lease payment during the lease's origination process, the "expected depreciation of the vehicle" is one of the main integers in calculating an appropriate monthly lease payment. Another portion of the calculus is intended to cover interest, and another portion is intended to serve as a profit for the lessor. The lease agreement itself will indicate that the vehicle has a residual value at the end of the lease. This residual value is theoretically intended to correlate with the amount of money that the vehicle will be worth at the end of the lease.

21. When the value of the vehicle ends up being higher than the payoff during the term of the lease, or winds up being worth more than the residual value at the end of the lease, then the vehicle has equity. If the vehicle has equity, this is because the lessee was paying more money than was actually necessary to protect the lessor from the expected depreciation of the vehicle's value.

22. In a closed-end consumer vehicle lease, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease.

23. Alternatively, the lessee is entitled to trade-in their vehicle during the lease and then use the trade-in as a down payment for the purchase or lease of another vehicle. The vehicle "trade-in" is a common, established transaction in the automobile industry, and it can be utilized towards a down payment when consumers invariably seek to acquire a new vehicle.

24. The vehicle trade-in is vital to consumer vehicle transactions because most consumers lack the liquidity to exercise the purchase option on their own. Furthermore, if a consumer exercises the purchase option on their own, the consumer will likely have to pay sales tax, which is an avoidable transaction cost when the

vehicle is sold to a dealership. Paying sales tax reduces the equity that the consumer has in the vehicle.

25. A practical example of this process occurs when a lessee will take their Mercedes to a non-Mercedes brand dealer; trade in their Mercedes for a new vehicle by transferring their Mercedes lease's purchase option over to the different brand dealer; and the different brand dealer will then utilize the residual value of the "trade-in" towards the consumer's purchase or lease of a new, non-Mercedes vehicle.

26. As a point of emphasis, the practice of "third-party payoffs" or "vehicle trade-ins" is foundational to not only the used car business, but to the lessee's ability to capture any unexpected equity in their vehicles—a privilege implicit in the purchase option contained in every one of Defendants' lease agreements.

27. In fact, the practice of vehicle trade-ins is so common, that California statutorily codified a licensed vehicle dealer's rights and duties with respect to "trade-ins." Specifically, Cal. Vehicle Code § 11709.4 sets forth the manner in which a licensed motor vehicle dealer is supposed to "purchase or obtain a vehicle in trade in a retail sale…[which] is subject to a prior credit or lease balance" if, amongst other things, the dealer "tender[s] the agreed upon amount as provided in the written agreement to the lessor…or to the legal owner reflected on the ownership certificate, or to the designee of that lessor or legal owner within 21 calendar days of purchasing or obtaining the vehicle in trade." (Cal. Vehicle Code § 11709.4(a)(1)).

28. It should be noted that although § 11709.4 does not explicitly vest within all licensed dealers the ability to accept trade-ins, it must necessarily be assumed that the legal right to accept trade-in vehicles must exist. In other words, it would be implausible for the Legislature to regulate dealer conduct with respect to accepting trade-ins if dealers did not have the right to accept, and consumers did not have the right to present, "trade-ins" in the first instance.

29. When, like here, a legislative enactment is silent on the issue of whether a dealer has the free right to accept vehicle trade-ins, it must be assumed that such an

omission does not signal disapproval, but rather, that the conduct is so inherent in the idea of the trade itself, that it requires no statutory affirmation.

30. Similarly, Cal. Civil Code § 2987 discusses a "Lessee's right to early termination of lease contract; conditions; notice." In explaining a consumer's rights, Section (f) states, "Subdivisions (b) to (d), inclusive, do not apply if, prior to the scheduled expiration date specified in the lease contract, the lessee terminates the lease and purchases the vehicle or trades in the vehicle in connection with the purchase or lease of another vehicle."

31. Pursuant to Cal. Civil Code § 2987, consumers have the right to terminate their lease early in connection with the purchase or lease of another vehicle, and when doing so, the money owed to the lessor is the payoff as amortized, based upon the financial structure of the lease.

32. In light of a dealer's statutory right to accept vehicle trade-ins, we now turn to Defendants' unfair and unlawful business practices which form the basis of this Complaint.

**DEFENDANTS' UNLAWFUL AND UNFAIR BUSINESS PRACTICES**

33. Recently, due to the shortage of vehicles, and due to the rise in used vehicle values, Defendants have willfully sought to place an unfair restraint on trade in violation of California law. Specifically, Defendants have engaged in a pattern and practice of collusive conduct amounting to unfair competition by refusing to allow non-Mercedes dealerships to accept their leased vehicles as a trade-in and refusing to allow consumers to sell their vehicles to non-Mercedes dealerships.

34. By way of example, let us suppose that a consumer who has 10 months left on their Mercedes lease is tired of driving the Mercedes and now wants to lease a different brand vehicle. When that consumer arrives at a different brand dealership and attempts to trade in their vehicle, the different brand vehicle dealer is prevented from accepting the vehicle because Mercedes refuses to allow non-Mercedes

dealerships to accept their vehicles as a "trade-in." The same is true if the consumer attempts to trade in the vehicle, or sell the vehicle, to an independent used vehicle dealership.

35. Instead, Defendants will only allow the consumer to trade in the vehicle with Mercedes brand vehicle dealerships. That is to say, if a person is leasing a Mercedes, they are essentially stuck with a Mercedes, and if they want to capture the equity in their vehicle, or trade-in the vehicle during the lease, they are relegated to dealing strictly with Mercedes. Mercedes brand dealerships thus have a control on the market, harming the fair trade of vehicles in the marketplace.

36. By keeping their vehicles on the Mercedes Merry-Go-Round, Mercedes not only prevents consumers from using the value in their leased vehicles as a trade-in towards the purchase of a competitor-brand vehicle, but they are also preventing dealerships, such as Plaintiff, from exercising their right to purchase these leased vehicles as a trade-in pursuant to Vehicle Code § 11709.4.

37. Not only that, but the Mercedes Merry-Go-Round serves to prevent consumers from capturing the equity in their vehicle by requiring consumers to trade-in their vehicle at below market value. Disturbingly, Mercedes trades-in the vehicle, then sells that same vehicle as "Certified Pre-Owned." In this regard, Defendants are placing a restraint on trade in an effort to continuing selling their products (Certified Pre-Owned warranty designation and financing), unfairly harming non-Mercedes dealerships, and violating the letter and spirit of California law.

38. Defendants have colluded with each other to engage in the wrongful conduct alleged herein. Defendants have engaged in this conduct for their mutual benefit including, but not limited to (1) Ensuring that only dealerships which are Mercedes brand dealerships can purchase Mercedes vehicles which have been previously leased; (2) Ensuring that Defendants generate further profits by having their franchise dealerships resell these vehicles to consumers, who will likely finance the vehicles with MBFS and who will pay a premium in order to obtain the Certified

Pre-Owned designation. This ensures that MBFS and MBUSA continue to generate income and ensures that Mercedes brand dealerships continue to make money.

39. This conduct harms consumers by forcing consumers who wish to sell leased vehicle to only sell the vehicles to Mercedes dealerships, who will often pay less than independent dealerships would pay, because consumers are unable to make these vehicles available to open market. This conduct also harms non-Mercedes dealerships, because the non-Mercedes dealerships are wrongfully denied access to these vehicles.

40. In analyzing the meaning of Defendants' wrongful conduct, it is important to understand that there is no business reason for MBFS to allow Mercedes dealerships to purchase vehicles leased through MBFS, but not allow non-Mercedes dealerships to purchase the vehicles, other than the obvious reasons of Defendants seeking to gain an unfair advantage in the marketplace, as described herein. Put more simply, if MBFS believes it has a legitimate contractual right to refuse to allow consumers to sell their leased vehicles to a dealership, MBFS has waived any such right by allowing consumers to transact with Mercedes dealerships, but not with non-Mercedes dealerships. Any such contractual right is a pretext and has been waived.

## **FACT'S RELEVANT TO PLAINTIFF**

41. At all times herein relevant, Plaintiff, a high-end luxury used vehicle dealership, has had numerous putative customers attempt to trade-in their Mercedes vehicles which were still under lease to Plaintiff, or sell their Mercedes vehicles to Plaintiff, only to have Defendants refuse and prohibit any attempt by Plaintiff to accept these vehicles as a trade in. Defendants have refused to allow Plaintiff to pay off the vehicles and take title. Instead, Defendants will only allow consumers to trade-in their vehicles with an authorized Mercedes dealership.

42. Indeed, on November 4, 2021, an employee of Plaintiff contacted Mercedes-Benz Foothill Ranch to inquire about a "trade-in" with a third-party. In response to

his inquiry, a representative of Mercedes-Benz Foothill Ranch responded that "MB Dealers are the only ones allowed to payoff an MBFS Lease…No 3rd party payoffs."

43. In essence, Defendants have cornered the used vehicle market by refusing to allow lessees to trade-in their vehicles with anyone other than Defendants' affiliates.

44. Defendants' conduct as alleged herein violates California's unfair business practices statute, California Business and Professions Code sections 17200 *et seq*.

45. Plaintiff has suffered damage as a result of Defendants' wrongful, unfair, and unlawful conduct.

46. Plaintiff seeks injunctive relief compelling Defendants' to immediately cease violating California law by refusing to allow vehicle trade-ins which, pursuant to Vehicle Code § 11709.4 and Civil Code § 2987, are presumed effective and lawful upon a dealer tendering full payment of the vehicle's value.

## **CLASS ACTION ALLEGATIONS**

47. Plaintiff brings this action on behalf of itself, and all others similarly situated.

48. The class consists of all non-Mercedes vehicle dealerships in California whose rights to accept trade-in vehicles have been violated as a result of Defendants' refusal to allow assignment of leased vehicles' purchase options.

49. Plaintiff reserves the right to establish subclasses.

50. There is a well-defined community of interest, and the class is readily ascertainable:

(a) Numerosity: The members of the class are so numerous that joinder is unfeasible and impractical. The membership of the entire class is unknown to Plaintiff at this time. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable.

(b) Plaintiff's claims are typical of the class members with whom it has a well-defined community of interest.

(c) Adequacy: Plaintiff will fairly and adequately protect the interests of each class member. Plaintiff acknowledges it has an obligation to make known any relationship, conflicts, or differences with any class member. Plaintiffs' attorneys are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and will continue to incur costs and attorneys' fees to prosecute the action for the benefit of each class member.

(d) Superiority: Class action adjudication is superior to other methods, as it will achieve economies of time, effort and expense compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for the entire class.

51. There are common questions of law and fact as to the class (and subclass, if any) that predominate over questions affecting only individuals, including but not limited to whether Defendants engaged in unfair competition, and whether Plaintiff and class members are entitled to injunctive relief enjoining Defendants from refusing to allow vehicle trade-ins with non-Mercedes dealerships.

## FIRST CAUSE OF ACTION
## VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200
### (Against All Defendants)

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

53. California Business and Professions Code § 17200 prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."

54. As alleged herein, Defendants have engaged in unlawful and unfair business practices.

55. Plaintiff and Defendants are "persons" as that term is defined in Business and Professions Code § 17201.

56. Defendants violated the UCL by knowingly and intentionally refusing to allow licensed vehicle dealers to accept Defendants' vehicles, which were still under lease, from accepting those vehicles as "trade-ins"—which is Plaintiff's statutory right pursuant to Vehicle Code §11709.4 and Civil Code § 2987.

57. Defendants' unlawful and unfair business acts and practices alleged herein caused damage to Plaintiff and other putative class members.

58. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff has suffered injury in fact and lost money or property and will continue to do so.

**Unfair Prong**

59. An act or act or practice is "unfair" if the consumer injury is substantial; is not outweighed by any countervailing benefits to consumers or to competition; and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.

60. Defendants' actions constitute an "unfair" business practice because Defendants refused to allow Plaintiff to exercise his statutory right to accept a trade-in vehicle for value pursuant to Vehicle Code § 11709.4 and Civil Code § 2987.

61. Defendants' business practices are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that consumers are led being prevented from exercising the statutory rights alleged herein.

62. Additionally, conduct is "unfair" because it is tethered to a specific constitutional, statutory or regulatory provision. Here, Defendants' unfair conduct is tethered to its interference with Plaintiff's statutory rights pursuant to Vehicle Code § 11709.4 and Civil Code § 2987.

63. All of the acts and practices of Defendants as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of Defendants' unfair business acts and practices as set forth herein.

64. Defendants' conduct is unfair because it prevents consumers from having any hope at all of capturing any of the equity in their lease, or terminating their lease early, unless the consumer pays out of their own pocket to pay the vehicle off, sells the vehicle to a Mercedes dealership or trades the vehicle in at a Mercedes dealership. From a practical perspective, consumers often lack the desire or liquidity to pay off the vehicles. As a result, consumers who wish to terminate their lease early or capture any of the equity in their lease are forced to do so at a Mercedes dealership. This unfair and unlawful conduct harms competition, and unfairly prevents non-Mercedes dealerships' from transacting business.

65. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff has suffered damages.

66. Defendants' conduct does not benefit consumers or competition. Plaintiff could not reasonably avoid the injury suffered or the injury that will be suffered. Defendants' conduct only benefits Defendants themselves.

67. The gravity of the conduct as described above outweighs the justification, motive, or reason therefor, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth

in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

68. Defendants could have and should have furthered its legitimate business interests by allowing non-Mercedes dealerships to accept Mercedes vehicles as trade-ins.

69. Defendants could have and should have furthered their legitimate business interests by abstaining from aggressively interfering with the statutory rights of competitor dealerships.

70. To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Defendants' justification and motives for its conduct, and as to the impact of Defendants' conduct on Plaintiff and others.

71. Defendants' acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs.

### **Unlawful Prong**

72. A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

73. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

74. Pursuant to Vehicle Code § 11709.4 and Civil Code § 2987, a lessee has the right to terminate a lease contract at any time prior to the date specified in the lease contract and there is a methodology for any dealership, Mercedes or otherwise, to pay off the vehicle. When consumers attempt to terminate that contract by trading in or selling their leased vehicles at non-Mercedes dealerships, Defendants interfere with this rights by arbitrarily and capriciously refusing to allow the vehicle to be traded in at a non-Mercedes dealership, and thus imposing unfair and unreasonable

restrictions on a licensed dealer's statutory right to accept the vehicle as a "trade-in." The only actual reason that Defendants do this is to gain an unfair advantage in the marketplace.

75. Defendants have, by theirs conduct, engaged in unfair competition and unlawful and unfair business practices.

76. Defendants' acts of unlawful competition as set forth above present a continuing threat to the existence and vitality of the used car market, and these unlawful acts will persist and continue unless and until this Court issues appropriate injunctive relief.

77. Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, C.C.P. § 1021.5.

## **JURY DEMAND**

78. Plaintiff hereby demands a trial by jury on all issues of fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

<u>First Cause of Action</u>

1. For an order enjoining Defendants from refusing to allow vehicle dealerships the ability to exercise their statutory right to accept vehicle trade-ins pursuant to Vehicle Code § 11709.4
2. Attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5
3. Pre-judgment interest; and
4. For other relief that this Court deems just and proper.

Date: November 8, 2021                LAW OFFICE OF ROBERT L. STARR

                                         <u>/s/ Robert Starr</u>
                                           Attorney for Plaintiff
                                           Calabasas Luxury Motorcars, Inc.