Robert L. Starr (183052)
robert@starrlaw.com
Adam M. Rose (210880)
adam@starrlaw.com
Theodore R. Tang, Esq. (313294)
theodore@starrlaw.com
THE LAW OFFICE OF ROBERT L. STARR, APC
23901 Calabasas Road, STE #2072
Calabasas, CA 91302
Telephone: (818) 225-9040
Facsimile: (818) 225-9042

Attorneys for Plaintiff
Calabasas Luxury Motorcars, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC; MERCEDES-BENZ FINANCIAL SERVICES USA, LLC and and DOES 1 to 10, <br><br> Defendants. | Case No.: 2:21-cv-08805-FMO-AS <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> 1. Violation of the Cartwright Act <br> 2. Violation of the Unfair Competition Law <br><br> JURY TRIAL DEMANDED |

## __INTRODUCTION__

1.  Plaintiff Calabasas Luxury Motorcars brings this action to remedy and enjoin ongoing antitrust and state law violations which stem from Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Financial Services, USA, LLC's (collectively "Defendants") anticompetitive conduct.

2.  As alleged below, Defendants have committed flagrant violations of antitrust law and inflicted widespread harm on both new and used automotive dealers; their

customers; and the automotive industry as a whole.

3.  Specifically, Defendants have conspired in an attempt to eliminate the competition faced by Mercedes franchise dealerships with regard to the purchase and sale of used Mercedes vehicles. Defendants have done so by intentionally impeding and frustrating the ability of non-Mercedes franchise dealerships to purchase used Mercedes vehicles, leased through Mercedes-Benz Financial Services USA, LLC, as trade in vehicles, and by impeding and frustrating the ability of consumers to sell their used Mercedes vehicles, leased through Mercedes-Benz Financial Services USA, LLC to non-Mercedes franchise dealerships. Consequently, where there was once a robust market for third-party lease payoffs and Mercedes trade in vehicles, Defendants, through their coordinated conduct, have significantly damaged if not destroyed competition within that market from non-Mercedes franchise dealerships.

4.  Defendants have placed these artificial and anticompetitive restrictions on the used vehicle market for Mercedes vehicles in order to ensure that Defendants, and their franchise dealerships, maintain dominance over the entire market for used Mercedes vehicles. As a consequence of this anticompetitive conduct, Plaintiff and others similarly situated have suffered immense economic injury.

5.  As described in greater detail below, Defendants and their subsidiaries, agents, and co-conspirators entered into and implemented a continuing combination and conspiracy to fix, raise, maintain, or stabilize retail prices for and restrain trade for used Mercedes vehicles sold in California. This activity constitutes an unlawful combination, trust, agreement, understanding, and concert of actions in restraint of trade, in violation of California Business and Professions Code §§ 16700 *et seq.* and 17200 *et seq.*

6.  As a result of Defendants' unlawful conduct, Plaintiff and other members of the class have paid artificially inflated prices for used vehicles, have been prevented from purchasing used Mercedes vehicles from lessees where Mercedes-Benz

Financial Services USA, LLC has been the lessor, and have been prevented from accepting said leased Mercedes vehicles as trade in vehicles.

7.  Non-Mercedes franchise car dealers who accept trade in vehicles are direct targets of Defendants' conspiracy because Defendants are restraining and attempting to prevent competition within the secondary market for the purchase, sale, and trade in of used Mercedes vehicles by non-Mercedes franchise dealers.

8.  In seizing control over the secondary market for Mercedes vehicles wherein the lessor is Mercedes-Benz Financial Services USA, LLC, Defendants have thwarted Plaintiff and other dealers' ability to enter or trade in this market. Defendants have engaged in this conduct for no other purpose than to unlawfully enrich Defendants and Mercedes franchise dealers at the expense of Plaintiff and those similarly situated. Enriching Mercedes franchise dealers directly benefits Defendants.

## **PARTIES**

9.  Calabasas Luxury Motorcars ("Plaintiff") is a California corporation, with its principal place of business located in Los Angeles County, State of California.

10. Defendant Mercedes-Benz USA, LLC ("Mercedes") is a Delaware limited liability company with its principal place of business located in Sandy Springs, Georgia.

11. All acts and omissions of Mercedes' employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and Mercedes is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

12. Defendant Mercedes-Benz Financial Services USA, LLC ("MBFS") is a Delaware limited liability company with its principal place of business located in Farmington Hills, Michigan.

///

13. All acts and omissions of MBFS's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and MBFS is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

14. Plaintiff is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 10, ("Doe Defendants"), and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the fictitiously named Doe Defendants participated in some way in the wrongful acts and omissions alleged

## JURISDICTION AND VENUE

15. The Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C § 1332(a).

16. This is a civil action in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

17. At least one member of the California Class is a citizen of a State different from at least one Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

18. The claims asserted by the putative class, when aggregated as required by 28 U.S.C. § 1332(d)(6), exceeds the sum of $5,000,000 within the meaning of 28 U.S.C. 1332(d)(2).

19. The number of members of all putative classes alleged herein exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

20. The primary defendants are not States, State officials, or other governmental entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

21. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this claim occurred in the Central District of

California.

22. This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under statutory or common law pursuant to 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative facts such that adjudication of both state and federal claims furthers the interests of judicial economy.

## FACTUAL ALLEGATIONS

23. As a direct outgrowth of the SARS-CoV-2 ("COVID-19") pandemic, there has been a severe disruption to the global supply chain of motor vehicles.

24. This major squeeze on vehicle production during the pandemic has resulted in a drastic shortage in supply. Consumer demand has outpaced supply. Not surprisingly, this confluence of low supply and high demand has catapulted used and new car prices to record highs.

25. This unprecedented demand for vehicles has created a situation where many lessees whose lease terms have either not yet expired or are expiring have found themselves in possession of vehicles whose market values—as calculated by California Civil Code § 2987—are significantly more than the amounts owed on their respective leases.

26. In layman's terms, as a result of high demand, these vehicles did not lose as much value as anticipated, and there is equity in these lease contracts.

27. Due to this increased equity, consumers are recognizing that they are able to trade in or sell their vehicles and cash in on the equity in their vehicles. Many consumers, realizing that the value of their vehicles exceeds the payoff of their vehicles, have sought to either terminate their leases early and sell their vehicles, or sell their vehicles at the end of their leases rather then turning the vehicles over to MBFS.

///

///

## THE STRUCTURE OF VEHICLE LEASES & TRADE IN TRANSACTIONS

28. In calculating how much of a lease payment to charge consumers, MBFS factors in the "expected depreciation of the vehicle" in determining the monthly lease payment. The prevailing interest rate is another factor used in determining the monthly payment. Lastly, MBFS' profit is yet another factor. The lease agreement itself will indicate that the vehicle has a residual value at the end of the lease. This residual value is theoretically intended to correlate with the amount of money that the vehicle will be worth at the end of the lease. The residual value, plus any other fees and costs, is the amount that must be paid if the lessee wishes to exercise the lease's purchase option at the end of the lease.

29. When the value of the vehicle winds up being higher than the payoff during the term of the lease or winds up being more than the residual value at the end of the lease, then the vehicle has equity. If the vehicle has equity, this is because the lessee was paying more money than was actually necessary to cover the predetermined interest rate, the predetermined profit, and the actual depreciation of the vehicle's value during the term of the lease. Furthermore, in some circumstances, this may also occur if the vehicle goes up in value during the term of the lease.

30. With regard to MBFS' closed-end consumer vehicle lease products, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease.

31. Additionally, pursuant to California law, the consumer lessee of a MBFS closed end lease is entitled to trade in the vehicle during the term of the lease. If there is equity in the lease, the lessee can cash in on the vehicle's equity, either using the trade in value as a down payment for the purchase or lease of another vehicle or just collecting a cash payment for the equity. Vehicles being traded in is a common, established transaction in the automobile industry. In fact, even if there is not equity, or negative equity, consumers can still trade in their vehicles.

32. A practical example of this process occurs when a lessee will take their Mercedes to a non-Mercedes franchise dealer, trade in their Mercedes for a new vehicle, and the non-Mercedes franchise dealer will pay off the vehicle, with the consumer either paying the negative equity, or if there is equity, with the consumer using the equity towards the down payment of a new vehicle.

33. The ability of a consumer to trade in their vehicle is vital to consumer vehicle transactions. This is because most consumers lack the liquidity to come up with the money necessary to exercise their purchase option on their own and lack the ability to sell their vehicle for fair market value after exercising the purchase option. If a consumer was unable to trade in their vehicle during the term of their lease, the consumer would often times simply be stuck with the vehicle. A consumer's ability to trade in their Mercedes vehicle to a non-Mercedes franchise dealer is a necessary option that must be available, in order to ensure a robust competitive market for consumers who wish to sell their vehicles, as well as ensuring a robust competitive market for non-Mercedes franchise dealers who wish to purchase and sell Mercedes vehicles and consumers who wish to purchase used Mercedes vehicles.

34. As a point of emphasis, the practice of "third-party payoffs" or vehicle trade in transactions is foundational to not only the used car business, but to the lessee's ability to capture any unexpected equity in their vehicles—a privilege implicit in the purchase option contained in every one of Defendants' lease agreements.

35. In fact, the practice of vehicles being traded in is so common that California statutorily codified a licensed vehicle dealer's duties with respect to trade in transactions.

36. Specifically, Cal. Vehicle Code § 11709.4 sets forth the manner in which a licensed motor vehicle dealer is supposed to pay off a leased vehicle that the dealer obtains as a trade in from a consumer who is leasing the vehicle from a finance company (Cal. Vehicle Code § 11709.4(a)(1)).

37. It should be noted that although § 11709.4 does not explicitly vest within all licensed dealers the ability to accept leased vehicles as trade in vehicles, it must be assumed that the legal right to accept leased vehicles as trade in vehicles necessarily exists. In other words, it would be implausible for the Legislature to regulate dealer conduct with respect to accepting leased vehicles as trade in vehicles if dealers did not have the right to accept, and consumers did not have the right to present leased vehicles as trade in vehicles in the first instance. This is particularly true for closed end consumer leases which explicitly have ascertainable lease payoff amounts that can be quoted to consumers who wish to exercise the purchase option for their vehicles during the lease period and at the conclusion of the leases.

38. When, like here, a legislative enactment is silent on the issue of whether a dealer has the free right to accept a vehicle as a trade in, it must be assumed that such an omission does not signal disapproval, but rather, that the conduct is so inherent in the idea of the trade in itself, that it requires no statutory affirmation.

39. Similarly, Civil Code § 2987 discusses a lessee's right to early termination of a lease contract, conditions and notice. In explaining a consumer's rights, subdivision (f) states, "Subdivisions (b) to (d), inclusive, do not apply if, prior to the scheduled expiration date specified in the lease contract, the lessee terminates the lease and purchases the vehicle or trades in the vehicle in connection with the purchase or lease of another vehicle."

40. Pursuant to Ca. Civil Code § 2987, consumers have the right to terminate their lease early in connection with the purchase or lease of another vehicle, and when doing so, the money owed to the lessor is the payoff as amortized, based upon the financial structure of the lease. There is no reason why this right would be any different if a consumer simply wanted to trade in the leased vehicle, even if it was not in connection with the consumer purchasing another vehicle.

///

41. In light of a consumer's right to trade in their vehicle during its lease, as well as a non-Mercedes franchise dealer's right to accept trade in vehicles, we now turn to Defendants' unfair and unlawful business practices which form the basis for this Complaint.

## DEFENDANTS' UNLAWFUL AND UNFAIR BUSINESS PRACTICES

42. Recently, due to the shortage of vehicles, and due to the rise in used vehicle values, Defendants have willfully sought to place an unfair restraint on trade in violation of California law. Specifically, Defendants have engaged in a pattern and practice of collusive conduct amounting to unfair competition by intentionally impeding and frustrating the ability of non-Mercedes franchise dealerships to accept MBFS leased Mercedes vehicles as trade in vehicles while simultaneously intentionally impeding and frustrating the ability of consumers to sell their MBFS leased Mercedes vehicles to non-Mercedes franchise dealerships. The intention and effect of this conduct is to restrain trade.

43. By way of example, let us suppose that a consumer who has 10 months left on their MBFS lease is tired of driving the Mercedes and now wants to lease a different brand vehicle. When that consumer arrives at a non-Mercedes franchise dealership and attempts to trade in their MBFS leased Mercedes vehicle, the non-Mercedes franchise dealer is impeded and frustrated in its ability to accept the vehicle because MBFS intentionally impedes and frustrates the ability of the non-Mercedes franchise dealerships from purchasing MBFS leased Mercedes vehicles as trade in vehicles. The same is true if the consumer attempts to trade in the vehicle or sell the MBFS leased Mercedes vehicle to an independent used vehicle dealership.

44. MBFS' intentional anti-competitive conduct is designed to compel MBFS customers to only trade in their MBFS leased Mercedes vehicles to Mercedes franchise vehicle dealerships. That is to say, if a person is leasing a MBFS leased Mercedes vehicle, they are essentially stuck with a Mercedes, and if they want to

capture the equity in their vehicle, or trade in the vehicle during the lease, they are relegated to dealing strictly with Mercedes franchise dealerships. Furthermore, at the end of the lease, MBFS intentionally impedes and frustrates the ability of consumers to sell their MBFS leased Mercedes vehicles to non-Mercedes franchise dealerships. Furthermore, at the end of the lease, Defendants are intentionally impeding and frustrating consumers' ability to do anything other than lease return their vehicles, sell these vehicles to Mercedes franchise dealerships or purchase the vehicles with their own money or credit. Defendants and Mercedes franchise dealerships thus have intentionally exerted unlawful control over the market, thereby harming and interfering with the marketplace for used vehicles.

45. Defendants deny that they are engaging in wrongful conduct. Melinda Mernovage, director of Corporation Communications for MBFS, is quoted as saying, "In terms of exercising the lease purchase option, Mercedes-Benz Financial Services does not provide quotes to non-franchise dealers…However a customer may request a purchase option quote at any time, and we will accept a payment on a lease purchase from any verified payment source." However, despite MBFS' dismissive comments regarding these practices, a closer look at what is happening in the marketplace, and even Ms. Mernovage's own comments, proves that Defendants are engaging in the intentional anti-competitive conduct complained of herein. The intentional anti-competitive conduct is a coordinated agreement between Defendants. The evidence of this wrongful conduct is as follows:

        a. MBFS admittedly refuses to provide payoff quotes to non-franchise dealers but will provide payoff quotes to franchise dealers. This is a new practice. Until recently, MBFS used to provide payoff quotes to non-franchise dealers. The only actual non-pretextual reason that MBFS now refuses to provide payoff quotes to non-Mercedes franchise dealerships is to intentionally impede and frustrate competition and to impede trade.

As a result, it is difficult if not impossible for non-Mercedes franchise dealers to obtain accurate payoff quotes, making it very difficult if not impossible for non-franchise dealerships to structure deals relating to the acquisition of said vehicles. This newfound lack of cooperation by MBFS is designed to, and intentionally impedes and frustrates the ability of non-franchise dealers to purchase said vehicles and is an intentional restraint on trade.

b.  In addition to MBFS refusing to provide payoff quotes to non-Mercedes franchise dealerships, although MBFS states that it will accept payoff funds from any verified payment source, if the transaction involves a non-Mercedes franchise dealership, when the vehicle is paid off, MBFS sends the title to the lessee, not the entity paying the vehicle off. MBFS used to cooperate with titling instructions which often times directed MBFS to send the title to whoever is paying off the vehicle, provided that MBFS received authorization from the lessee. On information and belief, it is alleged that MBFS still cooperates with titling instructions if the acquiring dealership is a Mercedes franchise dealership, however MBFS no longer complies with this request if the acquiring dealership is not a Mercedes franchise dealership. MBFS' refusal to honor the terms of titling instructions which advises MBFS to forward the title to a purchasing dealer creates enormous risk for the purchasing dealer that there will either be a significant delay or inability to obtain the title. This newfound lack of cooperation by MBFS intentionally impedes and frustrates the ability of non-franchise dealers to purchase said vehicles and is an intentional restraint on trade.

c.  From a practical perspective, MBFS has gone to great lengths to intentionally impede and frustrate the ability of non-Mercedes franchise

dealerships to purchase MBFS leased Mercedes vehicles. This is
common knowledge in the automotive industry. As a result, Carmax, the
largest used vehicle dealership in the United States, who used to
purchase many MBFS leased Mercedes dealerships, has indicated it is
no longer able to purchase vehicles leased through MBFS. This is not
because Carmax does not want to purchase these vehicles, but because
Carmax realizes that MBFS has intentionally and seriously impeded and
frustrated, and from a practical perspective made it impossible for
Carmax to purchase these vehicles without encountering serious
obstacles. These serious obstacles have made it extremely difficult and
from a business model perspective impractical for Carmax to be able to
purchase these vehicles.

d. Carmax is quoted as stating, "We are disappointed by policies that
restrict a customer's ability to engage in the car buying and selling
process that they desire." Carmax keeps a list of leasing companies that
are engaging in the wrongful process of impeding trade. MBFS is on
that list.

e. Mercedes dealerships are also aware of Defendants' unfair restrictive
trade practices. On November 4, 2021, an employee of Plaintiff
contacted Mercedes-Benz Foothill Ranch to inquire about Plaintiff
purchasing a MBFS leased Mercedes from a third party. In response to
Plaintiff's inquiry about Plaintiff's ability to purchase the vehicle, a
representative from Mercedes-Benz Foothill Ranch is quoted as stating,
"MB Dealers are the only ones allwed to payoff an MBFS lease…No 3rd
party payoffs." The quote from the Mercedes-Benz Foothill Ranch
employee is a summary of the effect and understanding of what has
occurred in the marketplace as a result of Defendant's intentional anti-

1    competitive conduct.

2    46. By keeping Mercedes vehicles on the "Mercedes Merry-go-Round,"

3    Defendants are not only preventing consumers from selling their vehicles to non-

4    Mercedes franchise dealerships, but Defendants are also preventing dealerships, such

5    as Plaintiff, from exercising their rights to purchase these leased vehicles as trade in

6    vehicles.

7    47. Not only that, but the "Mercedes Merry-go-Round" serves to prevent

8    consumers from capturing the full equity in their vehicles by requiring consumers to

9    trade in their MBFS leased Mercedes vehicles only at Mercedes franchise

10   dealerships, reducing the market for consumers to sell the vehicles, thus reducing

11   competition and harming consumers. Disturbingly, this practice allows Defendants

12   and Mercedes franchise dealerships to control the market by purchasing leased

13   vehicles from consumers, and then selling the same vehicles as "Certified Pre-

14   Owned" vehicles to different consumers.

15   48. Selling vehicles with a "Certified Pre-Owned" designation is an opportunity

16   for Mercedes franchise dealerships to make more money on vehicles by further

17   marking up the price. It is also an opportunity for Mercedes to sell an additional

18   product—the "Certified Pre-Owned" warranty which is incorporated into the

19   "Certified Pre-Owned" designation.

20   49. Lastly, MBFS offers captive financing for "Certified Pre-Owned" vehicles,

21   giving MBFS a slice of the pie. In this regard, Defendants are placing a restraint on

22   trade in an effort to continue selling their products (Certified Pre-Owned warranty

23   designation and financing), while unfairly harming non-Mercedes franchise

24   dealerships and violating the letter and spirit of California law.

25   ///

26   ///

27   ///

28

-13-
FIRST AMENDED CLASS ACTION COMPLAINT

## **DEFENDANTS' ANTICOMPETITIVE CONDUCT**

50. At all times relevant, Defendants and others entered into and engaged in a continuing unlawful trust in restraint of trade and commerce, described above, in violation of Business and Profession Code § 16720.

51. These violations consisted of, but are not limited to, a continuing combination, trust, agreement, understanding, and concert of action among Defendants and others to restrain trade by intentionally impeding and frustrating the ability of non-Mercedes franchise dealerships to purchase MBFS leased Mercedes vehicles as trade in vehicles, and intentionally impeding and frustrating the ability of consumers to sell their vehicles to non-Mercedes franchise dealerships.

52. For the purpose of forming and effectuating this unlawful trust, Defendants and others have agreed, combined, and conspired as alleged herein.

53. Defendants have colluded with each other to engage in the wrongful conduct alleged herein. Defendants have engaged in this conduct for their mutual benefit including, but not limited to (1) ensuring to the greatest degree possible that only Mercedes franchise dealerships have access to MBFS leased Mercedes vehicles after they are traded in or sold at the end of the lease term; and (2) ensuring Defendants and Mercedes franchise dealers capture as much profit as possible by Mercedes franchise dealerships getting these vehicles, designating the vehicles as "Certified Pre-Owned" vehicles in order for the franchise dealers and Mercedes to make more money, and then reselling the vehicles to consumers who will finance the vehicles with MBFS. This is textbook collusive conduct.

54. If Defendants' anticompetitive conduct is allowed to continue unabated, it will continue to stifle the sale of used Mercedes vehicles at non-Mercedes franchise dealerships. In other words, California residents will, for the most part, only be able to purchase a used previously leased MBFS leased Mercedes vehicle from a Mercedes franchise dealership because MBFS will intentionally imped and frustrate

the ability of consumer lessees of MBFS leased Mercedes vehicles to sell or trade in their leased vehicles to anyone other than a Mercedes franchise dealership. Although this conduct will not impact vehicles which are purchased by consumers rather than leased, by controlling the market for vehicles which have been leased, Defendants are seizing major control over the market of Mercedes vehicles. This is because a large percentage of new Mercedes vehicles that are acquired new by consumers in California are acquired through lease rather than purchase.

55. In cornering the market for previously leased MBFS Mercedes vehicles, actual and future competition between Defendants, Plaintiff, and those similarly situated will be eliminated, or substantially reduced, and prices for Mercedes' used vehicles will rise to levels they would never have risen in the absence of Defendants' monopolistic and anticompetitive conduct. Furthermore, consumers who wish to sell their MBFS leased Mercedes vehicles will have reduced options, will enjoy less competition for the purchase of their vehicles, and thus will receive less money when selling or trading in their leased vehicles.

56. As a proximate result of the Defendants' unlawful contract, combination, or conspiracy, Plaintiff and those similarly situated have sustained damages, and will in the future sustain damages to their businesses and property in an amount in excess of the jurisdictional minimum.

## **ALLEGATIONS RELEVANT TO PLAINTIFF**

57. At all times herein relevant, Plaintiff, a high-end luxury used vehicle dealership, has had numerous customers attempt to trade in their MBFS leased Mercedes vehicles to Plaintiff, or sell their MBFS leased Mercedes vehicles to Plaintiff, only to have Defendants refuse and prohibit any attempt by Plaintiff to accept these vehicles as trade in vehicles. Defendants have refused to allow Plaintiff to pay off the vehicles and take ownership. Instead, Defendants will only allow consumers to trade in their vehicles with a Mercedes franchise dealership.

58. In essence, Defendants have cornered the prospective used vehicle market for MBFS leased Mercedes vehicles by intentionally impeding and frustrating the ability of lessees to trade in their vehicles to any dealership other than Mercedes franchise dealers.

59. Defendants' conduct as alleged herein violates California's unfair business practices statute, California Business and Professions Code § 16700 et seq., and Business and Professions Code § 17200 et seq. (the "UCL").

60. Plaintiff and the putative class have suffered damage as a result of Defendants' wrongful, unfair, and unlawful conduct.

61. Plaintiff seeks injunctive relief compelling Defendants to immediately cease violating California law by intentionally impeding and frustrating the ability of consumers to trade in their MBFS leased Mercedes vehicles to non-Mercedes franchise dealerships and by intentionally impeding and frustrating the ability of non-Mercedes franchise vehicle dealerships to purchase MBFS leased Mercedes vehicles.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action on behalf of itself, and all others similarly situated.

63. The class consists of all non-Mercedes franchise vehicle dealerships in California whose right to accept MBFS leased Mercedes vehicles as trade in vehicles and whose right to purchase MBFS leased Mercedes vehicles has in the past been or will in the future will be infringed upon and violated, and who have or will suffer damage, as a result of Defendants' unfair, unlawful, and anticompetitive conduct as stated herein.

64. Plaintiff reserves the right to establish subclasses.

65. There is a well-defined community of interest, and the class is readily ascertainable:

    (a)   Numerosity: The members of the class are so numerous that joinder is unfeasible and impractical. The membership of the entire class is unknown to

Plaintiff at this time. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable.

(b)   Typicality: Plaintiff's claims are typical of the class members with whom it has a well-defined community of interest.

(c)   Adequacy: Plaintiff will fairly and adequately protect the interests of each class member. Plaintiff acknowledges it has an obligation to make known any relationship, conflicts, or differences with any class member. Plaintiffs' attorneys are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and will continue to incur costs and attorneys' fees to prosecute the action for the benefit of each class member.

(d)   Superiority: Class action adjudication is superior to other methods, as it will achieve economies of time, effort and expense compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for the entire class.

66. There are common questions of law and fact as to the class (and subclass, if any) that predominate over questions affecting only individuals, including but not limited to whether Defendants engaged in unfair competition, and whether Plaintiff and class members are entitled to injunctive relief enjoining Defendants from intentionally impeding and frustrating the ability of vehicle trade in transactions with non-Mercedes franchise dealerships.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE CARTWRIGHT ACT
### (Against All Defendants)

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

///

68. At all times relevant, Defendants and their co-conspirators entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of the Cartwright Act, California Business and Professions Code § 16700 et seq.

69. As alleged herein, Defendants, by their unlawful conspiracy, have artificially placed a restraint on trade and artificially fixed, raised, inflated, and interfered with the market for used Mercedes vehicles in violation of California Business and Professions Code § 16700 et seq.

70. The contract, combination, or conspiracy consisted of and consists of a continuing agreement, understanding, and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and allocate the market for and restrain trade relating to used Mercedes vehicles.

71. For the purpose of formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators contracted, combined, and conspired by knowingly and intentionally impeding and frustrating the ability of non-Mercedes franchise dealers to accept MBFS leased Mercedes vehicles as trade in vehicles, and refusing allow non-Mercedes franchise dealers to purchase MBFS leased Mercedes vehicles from consumers. Defendants' conduct was in derogation of Plaintiff's rights, the rights of consumers, and the rights of the putative class.

72. As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination, or conspiracy, Plaintiff and those similarly situated have been injured in their business and property and have suffered damage due to Defendants' restraint of trade as alleged herein.

73. Plaintiff and those similarly situated would never have faced these barriers to commerce or entrance into the market in the absence of Defendants' and their co-conspirators anticompetitive conduct as alleged herein.

74. The result of this illegal anticompetitive activity is that there is a reduced number of used Mercedes vehicles available on the market for purchase by non-Mercedes franchise dealers for resale. Such conduct stifles competition, harms consumers, and harms the putative class.

75. Defendants have, by their conduct, engaged in a violation of the Cartwright Act.

76. Defendants' conduct as alleged herein presents a continuing threat to the existence and vitality of the used car market, and these unlawful acts will persist and continue unless and until this Court issues appropriate injunctive relief.

77. Plaintiff also seeks actual damages, treble damages, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**

**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**

**(Against All Defendants)**

78. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the paragraphs above and, to the extent necessary, pleads this cause of action in the alternative.

79. California Business and Professions Code § 17200 prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising."

80. As alleged herein, Defendants have engaged in unlawful and unfair business practices.

81. Plaintiff and Defendants are "persons" as that term is defined in Business and Professions Code § 17201.

82. Defendants violated the UCL by knowingly and intentionally impeding and frustrating the ability of non-Mercedes franchise dealers to accept MBFS leased Mercedes vehicles as trade in vehicles and by intentionally impeding and frustrating the ability of non-Mercedes franchise dealers to purchase MBFS leased Mercedes

1  vehicles from consumers, in violation of the law.

2   83. Defendants' unlawful and unfair business acts and practices as alleged herein

3  caused damage to Plaintiff and other putative class members.

4   84. As a direct and proximate result of Defendants' acts and practices in violation

5  of the UCL, Plaintiff and the putative class have suffered injury in fact and lost

6  money or property and will continue to do so.

7  **Unfair Prong**

8   85. An act or practice is "unfair" if the consumer injury is substantial; is not

9  outweighed by any countervailing benefits to consumers or to competition; and is not

10  an injury the consumers themselves could reasonably have avoided. An act or

11  practice also is unfair if it offends an established public policy or is immoral,

12  unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act

13  or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional,

14  statutory or regulatory provisions.

15   86. Defendants' actions constitute an "unfair" business practice because

16  Defendants intentionally impede and frustrate the ability of Plaintiff and the putative

17  class to exercise their right to purchase MBFS leased Mercedes vehicles as trade in

18  vehicles, and because Defendants intentionally impede and frustrate the ability of

19  Plaintiff and the putative class to purchase MBFS leased Mercedes vehicles from

20  consumers, in violation of the law and in furtherance of Defendants' efforts to

21  restrain trade.

22   87. Defendants' business practices are unfair because they offend established

23  public policy and are immoral, unethical, oppressive, unscrupulous, and substantially

24  injurious to consumers in that consumers are being prevented from exercising their

25  statutory rights as alleged herein.

26   88. Additionally, this conduct is "unfair" because it violates a specific

27  constitutional, statutory or regulatory provision. Here, Defendants' unfair conduct is

28

tethered to its interference with Plaintiff's rights as alleged herein.

89. All of the acts and practices of Defendants as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of Defendants' unfair business acts and practices as set forth herein.

90. Defendants' conduct is unfair because it prevents consumers from having a free market for lawfully selling their MBFS leased Mercedes vehicles, because it prevents consumers from capturing the full extent of equity in their vehicles, and because it is an unlawful restrain on trade which harms Plaintiff and the putative class.

91. From a practical perspective, consumers often lack the desire or liquidity to pay off their leased vehicles and sell them. As a result, due to Defendants' wrongful conduct, MBFS lessees who wish to terminate their lease early or capture any of the equity in their lease are forced to do so at a Mercedes franchise dealership. This unfair and unlawful conduct harms competition, restrains trade and unfairly prevents non-Mercedes franchise dealerships from being able to purchase MBFS leased Mercedes vehicles.

92. As a direct and proximate result of Defendants' acts and practices in violation of the UCL, Plaintiff and the putative class have suffered damages.

93. Defendants' conduct does not benefit consumers or competition. Plaintiff could not reasonably avoid the injury suffered or the injury that will be suffered. Defendants' conduct only benefits Defendants and Mercedes franchise dealers.

94. The gravity of the conduct as described above outweighs the justification, motive, or reason therefor, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth

in the laws detailed above, and is substantially injurious to the public, for the reasons set forth above.

95. Defendants could have and should have furthered their legitimate business interests and legal obligations by allowing non-Mercedes franchise dealerships to accept MBFS leased Mercedes vehicles as trade in vehicles.

96. Defendants could have and should have furthered their legitimate business interests and legal obligations by abstaining from aggressively interfering with the rights of Plaintiff and the putative class, as well as consumers.

97. To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to Defendants' justification and motives for its conduct, and as to the impact of Defendants' conduct on Plaintiff and others.

98. Defendants' acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs.

## **Unlawful Prong**

99. A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

100. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

101. A California consumer who has entered into a closed end vehicle lease has the right to terminate a lease contract at any time prior to the date specified in the lease contract. There is a mathematical methodology which is utilized to determine the vehicle payoff when the lease is being terminated early. When MBFS consumers attempt to terminate the lease of their MBFS leased Mercedes vehicle by trading in or selling their leased vehicles at non-Mercedes franchise dealerships, Defendants interfere with this right by arbitrarily and capriciously intentionally impeding and

frustrating the ability of the vehicle to be traded in at a non-Mercedes franchise dealership, and thus imposing unfair and unreasonable restrictions on a non-Mercedes franchise dealer's right to accept the vehicle as a trade in. Similarly, MBFS intentionally impedes and frustrates the ability of MBFS leased Mercedes vehicles to be sold to non-Mercedes franchise dealers by consumers at the end of the lease. The only actual reason that Defendants engage in such conduct is to gain an unfair advantage in the marketplace.

102. Defendants have, by their conduct, engaged in unfair competition and unlawful and unfair business practices.

103. Defendants' acts of unlawful competition as set forth above present a continuing threat to the existence and vitality of the used car market, and these unlawful acts will persist and continue unless and until this Court issues appropriate injunctive relief.

104. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## JURY DEMAND

105. Plaintiff hereby demands a trial by jury on all issues of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

First Cause of Action

1. An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the Plaintiff's Counsel as Class Counsel

2. An order requiring Defendants to pay for the cost of giving notice to the Class of Defendants' wrongful conduct

3. For an order enjoining Defendants from continuing the unlawful combination and conspiracy alleged in this Complaint

FIRST AMENDED CLASS ACTION COMPLAINT

4.  An award of damages to Plaintiff and those similarly situated in an amount to be trebled under antitrust law

5.  Attorneys' fees and costs

6.  Pre-judgment interest; and

7.  For other relief that this Court deems just and proper.

Second Cause of Action

1.  An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the Plaintiff's Counsel as Class Counsel

2.  An order requiring Defendants to pay for the cost of giving notice to the Class of Defendants' wrongful conduct

3.  For an order enjoining Defendants from continuing the unlawful and unfair conduct alleged in this Complaint

4.  For an order enjoining Defendants from intentionally impeding and frustrating the ability of vehicle dealerships the ability to exercise their statutory right to accept vehicle trade in vehicles pursuant to Vehicle Code § 11709.

5.  Attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5

6.  Pre-judgment interest; and

7.  For other relief that this Court deems just and proper.


Date: December 31, 2021                  LAW OFFICE OF ROBERT L. STARR

                                                    /S/
                                         _____
                                         Robert L. Starr
                                         Attorney for Plaintiff
                                         Calabasas Luxury Motorcars, Inc.