1  STROOCK & STROOCK & LAVAN LLP
   JULIA B. STRICKLAND (State Bar No. 83013)
2  ARJUN P. RAO (State Bar No. 265347)
   DAVID W. MOON (State Bar No. 197711)
3  2029 Century Park East, 18th Floor
   Los Angeles, CA 90067-3086
4  Telephone:   310-556-5822
   Facsimile:   310-556-5959
5  Email:        *lacalendar@stroock.com*

6  Attorneys for Defendant
     MERCEDES-BENZ USA, LLC
7

8                 **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 CALABASAS LUXURY                    )  Case No. 2:21-cv-08805-FMO-AS
   MOTORCARS, INC.,                    )
12                                     )  [Assigned to Hon. Fernando M. Olguin]
             Plaintiff,                )
13                                     )  **NOTICE OF MOTION AND**
        v.                             )  **MOTION OF DEFENDANT**
14                                     )  **MERCEDES-BENZ USA, LLC TO**
   MERCEDES-BENZ USA, LLC;             )  **DISMISS FIRST AMENDED**
15 MERCEDES-BENZ FINANCIAL             )  **COMPLAINT; MEMORANDUM OF**
   SERVICES USA, LLC and DOES 1        )  **POINTS AND AUTHORITIES IN**
16 through 10,                         )  **SUPPORT THEREOF**
                                       )
17           Defendants.               )
                                       )  Date:  March 10, 2022
18                                     )  Time: 10:00 a.m.
                                       )  Room: 6D
19                                     )
                                       )  Action Filed:  November 8, 2021
20                                     )
                                       )
21 _____   )

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE** that on March 10, 2022, at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Fernando M. Olguin, in Courtroom 6D, United States Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, California 90012, defendant Mercedes-Benz USA, LLC will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing the First Amended Complaint filed in this action on December 31, 2021, ECF No. 20, on the grounds that it, and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

 This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the pleadings and papers on file herein, all other matters of which the Court may take judicial notice and such other or further material as may be presented at or in connection with the hearing on this Motion.

 This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 21, 2021.

Dated:  January 28, 2022   STROOCK & STROOCK & LAVAN LLP
            JULIA B. STRICKLAND
            ARJUN P. RAO
            DAVID W. MOON

            By:_____/s/ David W. Moon_____
                David W. Moon

            Attorneys for Defendant
              MERCEDES-BENZ USA, LLC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

LA 52637460

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................ 3

      A.    The Parties ........................................................................ 3

      B.    Allegations of the First Amended Complaint ........................................ 4

      C.    The Mercedes-Benz Lease Agreement ............................................... 5

III.  ARGUMENT ................................................................................ 6

      A.    Standard on a Motion to Dismiss ................................................... 6

      B.    Plaintiff Fails to State a Claim Under the Cartwright Act. ....................... 7

            1.    Plaintiff Does Not, and Cannot, Allege Facts Establishing
                  an Agreement Between Separate Entities Capable of
                  Conspiring Under the Antitrust Laws. ....................................... 8

            2.    Plaintiff Does Not Adequately Allege a "Substantially
                  Adverse Effect on Competition in the Relevant Market." ................ 10

      C.    Plaintiff Similarly Fails to State a Claim Under the UCL. ..................... 12

IV.   CONCLUSION .............................................................................. 13

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arandell Corp. v. Centerpoint Energy Servs., Inc.,
  900 F.3d 623 (9th Cir. 2018) ................................................................. 9

Ashcroft v. Iqbal,
  556 U.S. 662 (2009).............................................................................. 7

In re Auto. Antitrust Cases I & II,
  1 Cal. App. 5th 127 (2016) ................................................................... 8

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)...................................................................... 6, 9, 10

Californians for Disability Rights v. Mervyn's, LLC,
  39 Cal. 4th 223 (2006) ........................................................................ 12

Chavez v. Whirlpool Corp.,
  93 Cal. App. 4th 363 (2001) ............................................................ 9, 13

In re Cipro Cases I & II,
  61 Cal. 4th 116 (2015) ........................................................................ 11

City of San Jose v. Off. of the Comm'r of Baseball,
  776 F.3d 686 (9th Cir. 2015) .............................................................. 13

Copperweld Corp. v. Independence Tube Corp.,
  467 U.S. 752 (1984)........................................................................... 8, 9

Exxon Corp. v. Super. Ct.,
  51 Cal. App. 4th 1672 (1997) ........................................................ 11, 12

Facebook Inc. v. Power Ventures, Inc.,
  No. C 08-5789 JF (RS), 2009 WL 3429568 (N.D. Cal. Oct. 22, 2009)................. 7

Freeman v. San Diego Ass'n of Realtors,
  77 Cal. App. 4th 171 (1999) ................................................................. 7

G.H.I.I. v. MTS, Inc.,
  147 Cal. App. 3d 256 (1983) ........................................................... 9, 10

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

LA 52637460

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067–3086

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
    250 F. Supp. 3d 438 (N.D. Cal. 2017) ......................................................... 7

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ......................................................... 7

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ......................................................... 13

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
    200 Cal. App. 4th 480 (2011) ......................................................... 10, 11, 12

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) ......................................................... 7

*Name.Space, Inc. v. ICANN*,
    795 F.3d 1124 (9th Cir. 2015) ......................................................... 7

*In re Netflix Antitrust Litig.*,
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ......................................................... 7

*Pac. Gas & Elec. Co. v. Cnty. of Stanislaus*,
    16 Cal. 4th 1143 (1997) ......................................................... 7

*Redwood Theatres, Inc. v. Festival Enters, Inc.*,
    200 Cal. App. 3d 687 (1988) ......................................................... 11

*United States v. Arnold, Schwinn & Co.*,
    388 U.S. 365 (1967) ......................................................... 12

*United States v. Topco Assocs., Inc.*,
    405 U.S. 596 (1972) ......................................................... 11

**Statutes**

Cal. Bus. & Prof. Code § 16700 <u>et seq.</u> ................................................. *passim*

Cal. Bus. & Prof. Code § 16720 ......................................................... 8

Cal. Bus. & Prof. Code § 16725 ......................................................... 8

Cal. Bus & Prof. Code § 17200 <u>et seq.</u> ................................................. *passim*

Cal. Bus. & Prof. Code § 17204 ......................................................... 12

-iii-

LA 52637460

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

Cal. Civ. Code § 2987 ................................................................................. 4

Cal. Veh. Code § 11709.4 ........................................................................... 4

**Rules**

Fed R. Civ. P. 12(b)(6) ............................................................................ 6, 7

-iv-
MOTION OF DEFENDANT MERCEDES-BENZ USA, LLC TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:21-cv-08805-FMO-AS

LA 52637460

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's claims against defendants Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Financial Services USA, LLC ("MBFS") (together, "Defendants") are fundamentally misdirected because the First Amended Complaint simply ignores how lease agreements are actually structured.  Plaintiff Calabasas Luxury Motorcars, Inc. ("Plaintiff"), a non-franchised used car dealership, repeatedly and inaccurately states that motor vehicle lessees have a right to "cash in on the equity in *their vehicles*."  Plaintiff goes on to allege that it, along with other third-party dealers, are being prevented or dissuaded from purchasing these leased vehicles *from the lessees* and are thus also deprived of their own supposed right to cash in on the equity in the vehicles.  However, the vehicles at issue *are not owned by Plaintiff's prospective customers.*  Instead, the vehicles are owned by the lessor, and third-party dealers like Plaintiff have no ownership interests or rights in the vehicles whatsoever.

Unlike a financed purchase, in which the customer owns the vehicle and is free to sell the vehicle at any time (thereby realizing any gain or loss in the vehicle's value), the *lessor* owns the vehicle under a lease contract.  As such, unless the lessee exercises his or her contractual right to purchase the vehicle, the *lessor* will realize any gain or loss in the vehicle's value due to unforeseen extrinsic events.  Although the lessee may have the contractual right to purchase the vehicle from the lessor at any time, the right to do so *is typically not assignable* without the lessor's consent.  Thus, unless the lessee personally exercises the lease's purchase option, the lessor has the unqualified right to sell or not to sell the vehicle as it sees fit, just as a manufacturer or distributor of new motor vehicles may require its vehicles to be sold only through franchised dealerships.

Contrary to Plaintiff's contentions, these types of exclusive-dealing arrangements are perfectly lawful under the antitrust laws.  Indeed, this is exactly

how dealership franchises are intended and expected to operate. In short, manufacturers and their affiliates are absolutely allowed to require that the vehicles they own be sold through manufacturer-franchised dealerships. Whether those vehicles are new from the factory or off-lease vehicles ultimately makes no difference whatsoever to the antitrust analysis.

Plaintiff's mischaracterizations aside, the First Amended Complaint also fails as a matter of law for numerous other reasons. According to the First Amended Complaint, MBFS instituted certain alleged changes to its vehicle leasing program to increase the number of leased vehicles made available for resale by franchised Mercedes-Benz dealerships. These changes were implemented, as alleged by Plaintiff, in response to the worldwide COVID-19 pandemic and global semiconductor shortage, which caused a severe disruption to the supply chain of motor vehicles. Plaintiff asserts that benefitting franchised Mercedes-Benz dealerships in this manner violates California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., and Unfair Competition Law, Cal. Bus & Prof. Code § 17200 et seq. (the "UCL"). Plaintiff's claims are meritless.

***First***, it is well settled that antitrust claims under California's Cartwright Act, like conspiracy claims under the federal Sherman Act, ***may not be brought against commonly owned affiliates***. Here, MBUSA and MBFS are affiliated entities. Thus, they operate as a single enterprise for purposes of antitrust analysis, a fact that is fatal to Plaintiff's claims. Similarly, it is fundamental that claims under the Cartwright Act must be based on a "combination" between separate entities and not simply unilateral conduct. Plaintiff's allegations in this regard of an "agreement" between MBUSA and MBFS are entirely conclusory. In particular, Plaintiff does not allege any facts establishing why MBUSA's purported "agreement" would have been needed for MBFS to change its policies regarding third-party payoffs or what MBUSA—which neither holds nor services the leases at issue—might have done to implement the alleged new policies. In other words, the First Amended Complaint

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

-2-

details only unilateral conduct by MBFS that is simply not actionable under the antitrust laws.

**Second**, even if Plaintiff had adequately alleged an agreement between separate entities capable of conspiring under the antitrust laws (which it has not), Plaintiff does not adequately allege an adverse competitive effect.  To state a claim under the Cartwright Act, as relevant here, Plaintiff must establish a substantially adverse effect on competition in the relevant market.  In an attempt to establish such an effect, Plaintiff identifies the relevant market as Mercedes-Benz vehicles leased by MBFS.  However, the relevant market here would be the much larger, interbrand vehicle market.  Plaintiff does not and cannot plausibly allege that impeding the sale of off-lease Mercedes-Benz vehicles to third-party dealers substantially impacts competition in the used car market as a whole.

**Third**, Plaintiff's UCL claim is equally baseless.  Plaintiff alleges that MBFS instituted policies that made it more difficult for Plaintiff to accept Mercedes-Benz vehicles as trade-ins, not that Plaintiff actually lost any money or property on a particular transaction, which is required to establish standing to sue under the UCL. Further, even if Plaintiff had adequately alleged standing under the UCL, Plaintiff's UCL claim is premised entirely on Defendants' purported antitrust violations.  It therefore fails for the same reasons discussed above.

Accordingly, MBUSA respectfully requests that the Motion be granted.

## II.     BACKGROUND

### A.     The Parties

Plaintiff is a California corporation operating as a "high-end luxury used vehicle dealership."  (1st Am. Compl. ¶¶ 9, 57, ECF No. 20.)  MBUSA is a Delaware limited liability company with its principal place of business in Sandy Springs, Georgia.  (Id. ¶ 10.)  MBFS is a Delaware limited liability company with its principal place of business in Farmington Hills, Michigan.  (Id. ¶ 12.)  MBFS is the servicer for Daimler Trust, the Mercedes-Benz entity to which the leases at issue in this

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

action are assigned.  (<u>See</u> Req. for Judicial Notice ("RJN") Ex. A ¶ 25.)  Both MBUSA and MBFS are wholly owned indirect subsidiaries of Daimler AG, a multinational automotive corporation incorporated and headquartered in the Federal Republic of Germany.  (<u>Id.</u> Ex. B at 247-48.)

**B.    Allegations of the First Amended Complaint**

Plaintiff filed the original Complaint in this action on November 8, 2021. (ECF No. 1.)  In the original Complaint, Plaintiff asserted a single claim for violation of the UCL predicated on Defendants' purported violation of California Vehicle Code section 11709.4 and California Civil Code section 2987.  (<u>See id.</u> ¶¶ 56, 60, 62, 74.)  On December 31, 2021, Plaintiff filed the operative First Amended Complaint, replacing Plaintiff's original theory of liability[1] with claims based on purported violations of California's Cartwright Act.  (<u>See</u> 1st Am. Compl. ¶¶ 67-77, 90, 101.)

In the First Amended Complaint, Plaintiff alleges that it has had "numerous" customers attempt to either trade in or sell leased Mercedes-Benz vehicles, only to have Defendants "impede" and "frustrate" Plaintiff's attempts to pay off the leases and purchase the vehicles from the lessor.  (1st Am. Compl. ¶¶ 57-58.)  Plaintiff does not specifically identify any of these alleged customers or state how Plaintiff was "impeded" or "frustrated" in any particular transaction.  Instead, Plaintiff generally alleges that although MBFS will provide a purchase option quote at any time upon the lessee's request, MBFS will only furnish the quote to the lessee or to a franchised Mercedes-Benz dealership.  (<u>Id.</u> ¶¶ 45-45.a.)  Plaintiff further generally alleges that although MBFS has confirmed that it accepts payoff funds from third-party dealerships such as Plaintiff, MBFS will only send the title to the lessee rather than the third-party dealer.  (<u>Id.</u> ¶ 45.b.)  In other words, Plaintiff alleges that it and other third-party dealers must obtain both the purchase option amount and the title from

---

[1] Plaintiff's original theory of liability was meritless.  Neither section 11709.4 nor section 2987 requires owners of leased vehicles to sell the vehicles to third parties like Plaintiff.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18ᵗʰ Floor
Los Angeles, California 90067-3086

the lessee, rather than directly from MBFS, in order to accept a leased vehicle as a trade-in and purchase the vehicle from the lessor.

Plaintiff alleges that MBFS previously provided payoff quotes and vehicle titles directly to third-party dealerships. (Id. ¶ 45.a-b.) Plaintiff alleges that MBFS's new policies in this regard are a response to the shortage of vehicles and rise in vehicle prices due to the COVID-19 pandemic. (Id. ¶¶ 23-27.) Plaintiff alleges that, as a result of these new policies, Plaintiff and other third-party dealers have suffered harm because "there is a reduced number of used Mercedes vehicles available on the market for purchase by non-Mercedes franchise dealers for resale," presenting "a continuing threat to the existence and vitality of the used car market." (Id. ¶¶ 74, 76.)

Based on the foregoing, Plaintiff asserts claims for: (1) restraint of trade in violation of the Cartwright Act; and (2) "unfair" and "unlawful" business practices in violation of the UCL. (Id. ¶¶ 67-104.) Plaintiff purports to assert these claims on its own behalf and on behalf of a putative class of other non-Mercedes-Benz vehicle dealerships in California. (Id. ¶ 63.)

## C. The Mercedes-Benz Lease Agreement

The lease agreements at issue in this case are typical motor vehicle lease agreements, in which the lessor holds title to the vehicle and the lessee's rights under the vehicle are not assignable. This is expressly stated in the lease terms:

> **Assignment and True Lease**
>
> You understand that this is a true lease and that you do not have equity or other ownership rights in the vehicle unless you purchase it from us. You may not assign, sell, sublease or arrange an assumption of your interests or rights under this lease or in the vehicle without our written permission.

(RJN Ex. A ¶ 25.) As is also typical of motor vehicle leases, other provisions of the agreement provide that the lessee may terminate the lease at any time by purchasing

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

-5-

the vehicle or returning it to a location specified by the lessor:

**Purchase Option**

If you purchase the vehicle at any time, you agree to re-register and re-title the vehicle in your name no later than 30 days from the time you purchase it. If you fail to do so, we reserve the right to cancel the registration.

**a. Scheduled Termination**. At the end of the scheduled Lease Term, you may purchase the vehicle "as is" for the amount set forth in section 9 of this lease plus any lease payments or other amounts due under the lease at the time of termination.

**b. Before Scheduled Termination.** At any time before the scheduled Lease End, you have an option to purchase the vehicle "as is" for the Early Purchase Option Price (described below).

(Id. ¶ 21.)

Taken together, these provisions reflect the fact that the lessee has a non-assignable right to purchase his or her leased vehicle at any time, but that this right is not transferable to others, including third-party dealers like Plaintiff, without the lessor's permission.

### III.    ARGUMENT

**A.    Standard on a Motion to Dismiss**

To survive a Rule 12(b)(6) motion, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). However, "[a]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion," and "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." McReynolds v. Merrill Lynch & Co., 694 F.3d 873, 885 (7th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A complaint should be dismissed under Rule 12(b)(6) "where the well-pleaded facts do not permit the court

LA 52637460

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1    to infer more than the mere possibility of misconduct." <u>Ashcroft</u>, 556 U.S. at 679.

2        Courts in California "demand a 'high degree of particularity in the pleading of

3    Cartwright Act violations.'" <u>GreenCycle Paint, Inc. v. PaintCare, Inc.</u>, 250 F. Supp.

4    3d 438, 446 (N.D. Cal. 2017) (quoting <u>Facebook Inc. v. Power Ventures, Inc.</u>, No. C

5    08-5789 JF (RS), 2009 WL 3429568, at *2 (N.D. Cal. Oct. 22, 2009) (internal

6    quotation marks omitted)).  "It is not enough merely to include conclusory

7    allegations that certain actions were the result of a conspiracy; the plaintiff must

8    allege facts that make the conclusion plausible." <u>Id.</u> (quoting <u>Name.Space, Inc. v.</u>

9    <u>ICANN</u>, 795 F.3d 1124, 1129 (9th Cir. 2015) (citing <u>Kendall v. Visa U.S.A., Inc.</u>,

10   518 F.3d 1042, 1047-48 (9th Cir. 2008)).  "Cartwright Act claims are properly

11   dismissed 'where the complaint makes conclusory allegations of a combination and

12   does not allege with factual particularity that separate entities maintaining separate

13   and independent interests combined for the purpose to restrain trade.'" <u>Id.</u> (quoting

14   <u>In re Netflix Antitrust Litig.</u>, 506 F. Supp. 2d 308, 320 (N.D. Cal. 2007) (quoting

15   <u>Freeman v. San Diego Ass'n of Realtors</u>, 77 Cal. App. 4th 171, 189 (1999))).

16   **B.    Plaintiff Fails to State a Claim Under the Cartwright Act.**

17       California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 <u>et seq.</u>,

18   "generally outlaws any combinations or agreements which restrain trade or

19   competition or which fix or control prices." <u>Pac. Gas & Elec. Co. v. Cnty. of</u>

20   <u>Stanislaus</u>, 16 Cal. 4th 1143, 1147 (1997).  The act does so by broadly prohibiting

21   "trusts," which are defined to include, among other things, "a combination of capital,

22   skill or acts by two or more persons" that is intended to "create or carry out

23   restrictions in trade or commerce."  Cal. Bus. & Prof. Code §§ 16720 (defining the

24   term "trust"), 16726 (prohibiting "trusts").  By contrast, the act provides that "[i]t is

25   not unlawful to enter into agreements or form associations or combinations, the

26   purpose and effect of which is to promote, encourage or increase competition in any

27   trade or industry, or which are in furtherance of trade." Cal. Bus. & Prof. Code §

28   16725.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

-7-

1   Here, as discussed below, Plaintiff's Cartwright Act claim fails because

2   Plaintiff does not, and cannot, allege facts establishing an agreement between

3   separate entities capable of conspiring under the antitrust laws and because Plaintiff

4   does not adequately allege a substantially adverse effect on competition in the

5   relevant market.

6   **1.   Plaintiff Does Not, and Cannot, Allege Facts Establishing an**

7   **Agreement Between Separate Entities Capable of Conspiring Under**

8   **the Antitrust Laws.**

9   It is well established that a Cartwright Act claim, like a conspiracy claim under

10  the federal Sherman Act, may not be brought against commonly owned affiliates.  In

11  Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 770 (1984), the

12  United States Supreme Court held that a parent corporation and a wholly owned

13  subsidiary are not separate entities capable of conspiring under the Sherman Act

14  because an antitrust conspiracy requires a "joining of two independent sources of

15  economic power previously pursuing separate interests."  The same principle applies

16  to Cartwright Act claims.  See In re Auto. Antitrust Cases I & II, 1 Cal. App. 5th

17  127, 155 (2016) (agreeing that Ford and its Canadian-based subsidiary could not

18  conspire with one another as a matter of law: "[W]e acknowledge the authority cited

19  by Ford for the proposition that a corporation and its wholly owned subsidiary are

20  incapable of conspiring under the antitrust laws.").  Moreover, the Ninth Circuit has

21  held that the rule applies not only to parents and subsidiaries, but also to other

22  commonly owned affiliates.  See Arandell Corp. v. Centerpoint Energy Servs., Inc.,

23  900 F.3d 623, 632 (9th Cir. 2018) ("In sum, Copperweld supports the following rule:

24  A wholly owned subsidiary that engages in coordinated activity in furtherance of the

25  anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to

26  engage in such coordinated activity with the purposes of the single 'economic unit'

27  of which it is a part.").

28  Here, Plaintiff does not allege facts establishing that Defendants are separate

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

entities capable of conspiring under the antitrust laws—i.e., "independent sources of economic power previously pursuing separate interests." <u>Copperweld</u>, 467 U.S. at 771.  Indeed, Plaintiff simply ignores the fact that MBUSA and MBFS are affiliated entities.

Similarly, it is fundamental that claims under the Cartwright Act must be based on a "combination" between separate entities and not simply unilateral conduct, since businesses (like individuals) are free to determine with whom to conduct their affairs.  <u>See</u> <u>Chavez v. Whirlpool Corp.</u>, 93 Cal. App. 4th 363, 369-72 (2001) (sustaining demurrer and explaining that a manufacturer may unilaterally set the price to be charged by retailers).  Thus, unilateral boycotts, like other forms of unilateral conduct, are not actionable at all, at least in the absence of coercive conduct.  <u>See</u> <u>id.</u>; <u>G.H.I.I. v. MTS, Inc.</u>, 147 Cal. App. 3d 256, 268 (1983).

In asserting joint conduct, antitrust allegations must be pleaded with "enough factual matter (taken as true) to suggest that an agreement was made." <u>Twombly</u>, 550 U.S. at 556.  Thus, "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." <u>Id.</u> at 556-57.  Instead, "allegations . . . must be placed in a context that raises a suggestion of a preceding agreement, not merely . . . conduct that could just as well be independent action." <u>Id.</u> at 557.

Here, Plaintiff does not—and cannot—plead the requisite conduct by MBUSA and MBFS because the First Amended Complaint does not actually allege ***any*** conduct by MBUSA.  In particular, although the First Amended Complaint alleges that MBUSA has indirectly benefitted from increases to the inventory of franchised dealers through sales of "Certified Pre-Owned" warranty coverage, the complaint does not allege any facts establishing why MBUSA's purported agreement would have been needed for MBFS to change its policies regarding third-party payoffs in the first instance, or what MBUSA—which neither holds nor services the leases at issue—might have done to implement MBFS's policies.  In other words, the First

-9-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

LA 52637460

Amended Complaint alleges only ***unilateral*** (and entirely proper) conduct by MBFS. Such unilateral conduct is simply not actionable under the antitrust laws.

> **2.     Plaintiff Does Not Adequately Allege a "Substantially Adverse Effect on Competition in the Relevant Market."**

Even if Plaintiff had adequately alleged an agreement between separate entities capable of conspiring under the antitrust laws, Plaintiff does not adequately allege a substantially adverse effect on competition in the relevant market.

The Cartwright Act generally prohibits both "horizontal" and "vertical" restraints of trade.  A horizontal restraint consists "of a collaboration among competitors." G.H.I.I., 147 Cal. App. 3d at 267.  A vertical restraint is "based upon an agreement between business entities occupying different levels of the marketing chain." Id.  Horizontal restraints are ordinarily illegal per se, while vertical restraints are evaluated under a "'rule of reason," which measures whether the anticompetitive aspects of the restraint outweigh its procompetitive effects. Marsh v. Anesthesia Servs. Med. Grp., Inc., 200 Cal. App. 4th 480, 493-95 (2011) (citation omitted).

In evaluating a restraint under the rule of reason, "a court may consider 'the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption.'" In re Cipro Cases I & II, 61 Cal. 4th 116, 146 (2015) (quoting United States v. Topco Assocs., Inc., 405 U.S. 596, 607 (1972)).  "[R]easonableness of [the] restraint is evaluated based on its impact on competition as a whole within the relevant market," and "it is plaintiff's burden to make the required showing of a '"substantially adverse effect on competition in the relevant market.'" Marsh, 200 Cal. App. 4th at 495 (citation omitted).

Notably, courts have held that "where an antitrust plaintiff alleges vertical restraints, facts must be pled showing 'some anticompetitive effect in the larger, interbrand market.'" Marsh, 200 Cal. App. 4th at 495, 499 (quoting Exxon Corp. v. Super. Ct., 51 Cal. App. 4th 1672, 1681 (1997) (holding that relevant market was all

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

-10-

gasoline sales, not wholesale market for franchisor's brand)).  In this regard, "the interchangeability of products is usually considered in the definition of markets; the boundary of a relevant market is defined by a significant degree of product differentiation." Redwood Theatres, Inc. v. Festival Enters, Inc., 200 Cal. App. 3d 687, 705 (1988).  However, "there will always be some degree of product differentiation within a market," and "very significant product differentiation can occasionally be found within a well[-]defined market." Id.

As discussed above, Plaintiff's Cartwright Act claim fails because MBUSA and MBFS are affiliates and also because Plaintiff does not allege any relevant conduct by MBUSA.  However, even if MBUSA and MBFS had acted in concert in a vertical trade relationship—which they did not—the First Amended Complaint still fails to allege a substantially adverse effect on competition in the relevant market.  In an attempt to establish a substantially adverse effect, Plaintiff identifies the relevant market as previously owned Mercedes-Benz vehicles.  (See, e.g., 1st Am. Compl. ¶ 4.)  However, under Marsh and Exxon, the proper market for a "rule-of-reason" analysis is the *interbrand* market.  Plaintiff does not and cannot plausibly allege that "impeding" off-lease Mercedes-Benz trade-ins substantially impacts competition in the used car market as a whole.

Finally, even if MBUSA and MBFS had acted in concert in a vertical trade relationship (they did not) *and* the relevant market were Mercedes-Benz vehicles (it is not) *and* Defendants prohibited payoffs from third-party dealers (they do not), Plaintiff's claims would still fail because providing off-lease vehicles only to franchised dealers is no different from providing new vehicles only to franchised dealers.  These types of exclusive-dealing arrangements are perfectly lawful under the antitrust laws because they do not adversely affect competition as a matter of law. See United States v. Arnold, Schwinn & Co., 388 U.S. 365, 376 (1967) ("[A] manufacturer of a product other and equivalent brands of which are readily available in the market may select his customers, and for this purpose he may 'franchise'

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

certain dealers to whom, alone, he will sell his goods."), <u>overruled on other grounds by</u> <u>Cont'l T. V., Inc. v. GTE Sylvania Inc.</u>, 433 U.S. 36 (1977).

Accordingly, Plaintiff's claim for violation of the Cartwright Act fails as a matter of law and should be dismissed.

## C.   Plaintiff Similarly Fails to State a Claim Under the UCL.

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  However, standing under the UCL is limited to any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; <u>see also</u> <u>Californians for Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 228 (2006).  To state a claim under the UCL, a plaintiff must allege both "a loss or deprivation of money or property sufficient to qualify as injury in fact" and "that [the] economic injury was the result of . . . the unfair business practice . . . that is the gravamen of the claim."  <u>Kwikset Corp. v. Super. Ct.</u>, 51 Cal. 4th 310, 322 (2011).  Moreover, "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' . . . ."  <u>City of San Jose v. Off. of the Comm'r of Baseball</u>, 776 F.3d 686, 691-92 (9th Cir. 2015) (quoting <u>Chavez</u>, 93 Cal. App. 4th at 375).  A UCL claim predicated on an antitrust violation "is therefore barred so long as [defendant]'s activities are lawful under the antitrust laws."  <u>Id.</u>

Here, Plaintiff's UCL claim fails each of these basic tests.  ***First***, Plaintiff does not plausibly allege that it lost money or property as a result of any conduct by MBUSA.  Although Plaintiff asserts that it "suffered damages" (<u>See</u> 1st Am. Compl. ¶ 92), this allegation is entirely conclusory.  Plaintiff alleges that MBFS instituted policies that made it more difficult for Plaintiff to accept off-lease Mercedes-Benz vehicles as trade-ins, not that Plaintiff actually lost any money or property on a

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1  particular transaction or due to any conduct by MBUSA, which is required to

2  establish standing to sue under the UCL.  ***Second***, even if Plaintiff had alleged

3  standing under the UCL, Plaintiff's UCL claim is premised entirely on Defendants'

4  purported antitrust violations.  It therefore fails for the same reasons discussed above.

**IV.    CONCLUSION**

5

6          For the foregoing reasons, MBUSA respectfully requests that the Court grant

7  the Motion in its entirety.

8  Dated:  January 28, 2022               Respectfully submitted,

9                                          STROOCK & STROOCK & LAVAN LLP
                                           JULIA B. STRICKLAND
10                                         ARJUN P. RAO
                                           DAVID W. MOON
11

12                                         By:_____/s/ David W. Moon_____
                                                      David W. Moon
13

14                                         Attorneys for Defendant
                                             MERCEDES-BENZ USA, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022, a copy of the foregoing **NOTICE OF MOTION AND MOTION OF DEFENDANT MERCEDES-BENZ USA, LLC TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

_/s/ David W. Moon_
David W. Moon

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

LA 52637460