STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 83013)
ARJUN P. RAO (State Bar No. 265347)
DAVID W. MOON (State Bar No. 197711)
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086
Telephone: 310-556-5822
Facsimile: 310-556-5959
Email: *lacalendar@stroock.com*

Attorneys for Defendant
  MERCEDES-BENZ USA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., | Case No. 2:21-cv-08805-FMO-AS |
| Plaintiff, | [Assigned to Hon. Fernando M. Olguin] |
| v. | **REPLY IN SUPPORT OF MOTION OF DEFENDANT MERCEDES-BENZ USA, LLC TO DISMISS FIRST AMENDED COMPLAINT** |
| MERCEDES-BENZ USA, LLC; MERCEDES-BENZ FINANCIAL SERVICES USA, LLC and DOES 1 through 10, | |
| Defendants. | Hearing Date:  May 12, 2022 Time: 10:00 a.m. Room: 6D |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................. 1

II.  ARGUMENT ........................................................................................ 4

    A.   Plaintiff Fails to State a Claim Under the Cartwright Act. ..................... 4

        1.   Claims Under California's Cartwright Act, Like
            Conspiracy Claims Under the Federal Sherman Act, May
            Not Be Brought Against Commonly Owned Affiliates ................ 4

        2.   The First Amended Complaint Details Only Unilateral
            Conduct by MBFS That Is Not Actionable Under The
            Antitrust Laws ........................................................................ 7

        3.   Plaintiff Does Not Adequately Allege a "Substantially
            Adverse Effect on Competition in the Relevant Market." ............. 9

    B.   Plaintiff Similarly Fails to State a Claim Under the UCL. ................... 10

III. CONCLUSION .................................................................................. 13

LA 52659014

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.,</u>
910 F.2d 139 (4th Cir. 1990) ........................................................................... 5

<u>Alig v. Quicken Loans Inc.,</u>
No. 5:12-CV-114, 2016 WL 10489897 (N.D. W. Va. June 2, 2016) .................... 5

<u>American Needle, Inc. v. National Football League,</u>
560 U.S. 183 (2010) ........................................................................................ 6

<u>Arandell Corp. v. Centerpoint Energy Servs., Inc.,</u>
900 F.3d 623 (9th Cir. 2018) ......................................................................... 4, 5

<u>Asahi Kasei Pharma Corp. v. CoTherix, Inc.,</u>
204 Cal. App. 4th 1 (2012) .............................................................................. 6

<u>In re Auto. Antitrust Cases I & II,</u>
1 Cal. App. 5th 127 (2016) ........................................................................... 4, 6

<u>Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.,</u>
849 F. Supp. 702 (N.D. Cal. 1994) ................................................................. 5, 7

<u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,</u>
20 Cal. 4th 163 (1999) ............................................................................... 12, 13

<u>Chavez v. Whirlpool Corp.,</u>
93 Cal. App. 4th 363 (2001) ..................................................................... 7, 8, 13

<u>City of San Jose v. Forsythe,</u>
261 Cal. App. 2d 114 (1968) ............................................................................ 2

<u>City of San Jose v. Off. of the Comm'r of Baseball,</u>
776 F.3d 686 (9th Cir. 2015) ....................................................................... 11, 13

<u>Cont'l T. V., Inc. v. GTE Sylvania Inc.,</u>
433 U.S. 36 (1977) .................................................................................... 10, 12

<u>Copperweld Corp. v. Independence Tube Corp.,</u>
467 U.S. 752 (1984) ................................................................................ *passim*

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daimler AG v. Bauman,
    571 U.S. 117 (2014)..............................................................................7

Exxon Corp. v. Super. Ct.,
    51 Cal. App. 4th 1672 (1997) ..........................................................9, 10

G.H.I.I. v. MTS, Inc.,
    147 Cal. App. 3d 256 (1983) ...............................................................8

Gonzalez-Maldonado v. MMM Healthcare, Inc.,
    693 F.3d 244 (1st Cir. 2012)................................................................6

Kendall v. Visa U.S.A., Inc.,
    518 F.3d 1042 (9th Cir. 2008) .............................................................8

Kwikset Corp. v. Super. Ct.,
    51 Cal. 4th 310 (2011)........................................................................10

Lenox MacLaren Surgical Corp. v. Medtronic, Inc.,
    847 F.3d 1221 (10th Cir. 2017) .........................................................6, 7

Levitt v. Yelp! Inc.,
    765 F.3d 1123 (9th Cir. 2014) ............................................................12

Marsh v. Anesthesia Servs. Med. Grp., Inc.,
    200 Cal. App. 4th 480 (2011) ...........................................................9, 10

Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.,
    671 F. Supp. 1525 (C.D. Cal. 1987) .....................................................5

In re Qualcomm Litig.,
    No. 17-CV-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8,
    2017) .................................................................................................12

In re Ray Dobbins Lincoln-Mercury, Inc. v. Ford Motor Co.,
    604 F. Supp. 203 (W.D. Va. 1984)........................................................5

Shroyer v. New Cingular Wireless Servs., Inc.,
    622 F.3d 1035 (9th Cir. 2010) ............................................................12

Stanislaus Food Prods. Co. v. USS-POSCO Indus.,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) ................................................2

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Stanislaus Food Prods. Co. v. USS-POSCO Indus.</u>,
    No. CV F09-0560LJO SMS, 2010 WL 3521979 (E.D. Cal. Sept. 3,
    2010) ................................................................................................................ 8

<u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 16720 ............................................................... 11

Cal. Bus. & Prof. Code § 17200 ............................................................... 12

Cal. Civ. Code § 2987 ............................................................................ 1, 11

Cal. Veh. Code § 11709.4 ...................................................................... 1, 11

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

# I.    INTRODUCTION

Plaintiff's Opposition continues to fundamentally misconstrue the nature of motor vehicle leases.[1]  As explained in the Motion, a lessee does not have a right to sell a leased vehicle to a third-party dealer ***because the lessee does not own the vehicle***.  Contrary to Plaintiff's repeated assertions, nothing in either Vehicle Code section 11709.4 or Civil Code section 2987 grants the lessee a right to sell a leased vehicle to a third-party dealer or provides a third-party dealer the right to purchase a leased vehicle from an unwilling lessor.  Unless the lessee exercises the lease's purchase option, the lessor has the unqualified right to sell or not to sell the vehicle as it sees fit, just as a manufacturer or distributor of new motor vehicles may require its vehicles to be sold only through franchised dealerships.  Plaintiff's contention that a lease's expressly non-assignable purchase option includes an "implicit privilege" to assign the lessee's purchase option (1st Am. Compl. ¶ 34) is meritless.

Apparently realizing the weakness of its position, Plaintiff asserts for the first time in its Opposition that the contractual purchase option provided to lessees is not at issue because "Plaintiff never alleged that consumers 'assigned' their purchase option."  (Opp'n 18-19.)  Instead, Plaintiff argues that dealers are allowed to purchase leased vehicles through a power of attorney.  (Id.)  While not strictly relevant to the Motion, Plaintiff's argument is without merit.  Plaintiff expressly cited assignment of the purchase option as the basis for its original Complaint.  (See Compl. ¶ 25, ECF No.1 ("A practical example of this process occurs when a lessee will take their Mercedes to a non-Mercedes brand dealer; trade in their Mercedes for a new vehicle ***by transferring their Mercedes lease's purchase option*** over to the different brand dealer; and the different brand dealer will then utilize the residual value of the 'trade-in' towards the consumer's purchase or lease of a new, non-Mercedes vehicle.") (emphasis added).)  Plaintiff cannot simply omit allegations that

---

[1] Terms are used herein as defined in the Motion.

LA 52659014

1   it now finds inconvenient.  See Stanislaus Food Prods. Co. v. USS-POSCO Indus.,

2   782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) ("The Court does not ignore the prior

3   allegations in determining the plausibility of the current pleadings.").

4        Moreover, as Plaintiff recognizes in its Opposition (Opp'n 18-19), a power of

5   attorney allows an agent to act on behalf of its principal but does ***not*** transfer the

6   principal's rights to the agent.  Thus, where only the lessee has the contractual right

7   to exercise a purchase option—as is the case here—a power of attorney cannot

8   require the lessor to sell a leased vehicle to someone else.  Furthermore, the anti-

9   assignment clause in MBFS's lease agreement would clearly preclude an effective

10  assignment of the purchase option through a power of attorney in any event.  Cf. City

11  of San Jose v. Forsythe, 261 Cal. App. 2d 114, 118 (1968) (holding that while a

12  power of attorney was not technically an assignment, a city ordinance prohibiting

13  assignment of retirement benefits also prohibited defendant from receiving employee

14  benefit checks under a special power of attorney).

15       Regardless, the arguments advanced by Plaintiff that are actually relevant to

16  the Motion are without merit.  Accordingly, as further detailed below, the Motion

17  should be granted in its entirety and without leave to amend.

18       ***First***, Plaintiff's argument that the rule announced in Copperweld Corp. v.

19  Independence Tube Corp., 467 U.S. 752 (1984), applies only to parents and their

20  direct subsidiaries but not to other affiliates ignores binding Ninth Circuit precedent

21  and the unanimous decisions of at least six other circuit courts.  Moreover, Plaintiff's

22  attempt to raise factual issues based on the "single entity test" or "intraenterprise

23  conspiracy test" similarly fails because both of these tests were expressly rejected by

24  the Supreme Court in Copperweld in favor of a per se rule.  Indeed, the entire point

25  of Copperweld is that related corporate entities are viewed as a single enterprise and

26  therefore cannot conspire with each other ***as a matter of law***.  Thus, once an affiliate

27  relationship is demonstrated—as it has been here—there is no need to conduct a

28  factual inquiry because the only relevant fact has already been established.

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

*Second*, the First Amended Complaint fails as a matter of law because it does not allege *any* relevant conduct by MBUSA.  In particular, Plaintiff does not allege any facts establishing why MBUSA's purported agreement would have been needed for MBFS to change its policies regarding third-party payoffs in the first instance, or what MBUSA—which neither holds nor services the leases at issue—might have done to implement MBFS's policies.  In other words, the First Amended Complaint alleges only *unilateral* (and entirely proper) conduct by MBFS.  Indeed, Plaintiff's Opposition does not even attempt to argue otherwise.

*Third*, Plaintiff does not adequately allege a substantially adverse effect on competition in the relevant market.  As courts have repeatedly explained, a plaintiff attempting to challenge an alleged vertical restraint of trade must allege an adverse effect in the *interbrand* market.  Here, as explained in the Motion, Plaintiff improperly attempts to identify the relevant market as Mercedes-Benz vehicles that are currently being leased by MBFS.  This is the very antithesis of the *interbrand* market required to state a claim under California antitrust law, and allowing an antitrust plaintiff to define the relevant market in this manner would render the requirement to prove market power utterly meaningless.  Moreover, even if Plaintiff had correctly identified the relevant market, Plaintiff does not allege the requisite adverse effect because exclusive-dealing arrangements are perfectly lawful under the antitrust laws.  Indeed, this is exactly how dealership franchises are intended and expected to operate.

*Finally*, Plaintiff's UCL claim fails as a matter of law.  Plaintiff fails to allege standing under the UCL because Plaintiff does not plausibly allege that it lost money or property in any particular transactions or as a result of any conduct by MBUSA.  In addition, the several tests for "unfairness" cited by Plaintiff are irrelevant because they apply only in consumer cases.  As explained by the Ninth Circuit, the correct test for "unfairness" between business-competitors (including both direct competitors and other market participants) is whether a defendant's conduct threatens an incipient

-3-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1  violation of an antitrust law or otherwise significantly threatens or harms

2  competition, which Plaintiff does not and cannot plausibly allege. Also, because

3  Plaintiff does not plausibly allege an unreasonable restraint of trade by MBUSA,

4  Plaintiff's claim for "unfair" business practices fails regardless of the particular test

5  employed.

6      Accordingly, MBUSA respectfully requests that the Motion be granted.

## II.    ARGUMENT

### A.   Plaintiff Fails to State a Claim Under the Cartwright Act.

**1.    Claims Under California's Cartwright Act, Like Conspiracy Claims Under the Federal Sherman Act, May Not Be Brought Against Commonly Owned Affiliates.**

12  As set forth in the Motion, Cartwright Act claims, like conspiracy claims

13  under the federal Sherman Act, may not be brought against commonly owned

14  affiliates because such entities operate as a single enterprise as a matter of law.  See

15  Copperweld, 467 U.S. at 770 (holding that a parent corporation and a wholly owned

16  subsidiary are not separate entities capable of conspiring under the Sherman Act); In

17  re Auto. Antitrust Cases I & II, 1 Cal. App. 5th 127, 155 (2016) (applying same rule

18  under Cartwright Act and recognizing that "a corporation and its wholly owned

19  subsidiary are incapable of conspiring under the antitrust laws"); Arandell Corp. v.

20  Centerpoint Energy Servs., Inc., 900 F.3d 623, 632 (9th Cir. 2018) ("In sum,

21  Copperweld supports the following rule: A wholly owned subsidiary that engages in

22  coordinated activity in furtherance of the anticompetitive scheme of its parent and/or

23  commonly owned affiliates is deemed to engage in such coordinated activity with the

24  purposes of the single 'economic unit' of which it is a part.").

25      In support of the Motion, Defendants requested judicial notice of the fact that

26  MBUSA and MBFS are wholly owned subsidiaries of Daimler AG.  (ECF No. 23-1

27  at 1 & Ex. B.)  In response, Plaintiff did not oppose the request for judicial notice

28  and in fact acknowledges Defendants' corporate relationship in the Opposition.  (See

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

-4-

Opp'n 13-14.)  Because Plaintiff does not and cannot dispute that Defendants are wholly owned subsidiaries of the same corporate parent, under Copperweld and its progeny Defendants cannot engage in an antitrust conspiracy as a matter of law.

In the Opposition, Plaintiff argues that Copperweld applies only to parents and subsidiaries and does not prohibit conspiracy claims against "sister" companies. (Pl.'s Opp'n 12-13.)  Plaintiff is mistaken.  *First*, Plaintiff simply ignores the Ninth Circuit's controlling opinion in Arandell, which expressly extended Copperweld to bar antitrust conspiracy claims against commonly owned affiliates.  See Arandell, 900 F.3d at 632.  *Second*, the case that Plaintiff primarily relies on, In re Ray Dobbins Lincoln-Mercury, Inc. v. Ford Motor Co., 604 F. Supp. 203 (W.D. Va. 1984), is not controlling and is no longer good law, as it was effectively disapproved by the Fourth Circuit in a later case.  See Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 146 (4th Cir. 1990) (extending Copperweld to conspiracy claims against sister corporations); Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp., 849 F. Supp. 702, 706 (N.D. Cal. 1994) (recognizing disapproval of Ray Dobbins and citing additional cases in the Fifth and Sixth Circuits extending Copperweld to claims against sister corporations).  Plaintiff's reliance on Alig v. Quicken Loans Inc., No. 5:12-CV-114, 2016 WL 10489897 (N.D. W. Va. June 2, 2016), and Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc., 671 F. Supp. 1525 (C.D. Cal. 1987), is similarly misplaced.  Both decisions predate Arandell, and the court in Newport Components found Ray Dobbins distinguishable without addressing whether the case was correctly decided.

Plaintiff's argument that courts must apply a fact-intensive "single entity" or "intraenterprise conspiracy" test before determining whether affiliated entities may be liable for conspiring under the antitrust laws," see Opp'n 14 (citing MacManus v. A. E. Realty Partners, 146 Cal. App. 3d 275 (1983)), is meritless.  Both of these tests were expressly rejected by the Supreme Court in Copperweld.  See Copperweld, 467 U.S. at 759, 777 & n.18.  Instead, Copperweld adopted a per se rule under which the

-5-

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

various factors previously considered by courts, including whether the parent exercises control over the subsidiary or the subsidiary sets policy independently, are simply irrelevant.  Instead, under Copperweld, a corporate parent and its wholly owned subsidiary are treated as a single entity as a matter of law.  Moreover, as stated in the Motion, this reasoning applies equally to Cartwright Act claims.  See In re Auto. Antitrust Cases I & II, 1 Cal. App. 5th at 155; Asahi Kasei Pharma Corp. v. CoTherix, Inc., 204 Cal. App. 4th 1, 11 (2012).

Plaintiff's reliance on American Needle, Inc. v. National Football League, 560 U.S. 183 (2010), is misplaced.  In American Needle, the Supreme Court held that Copperweld did not preclude antitrust claims against a joint venture comprised of independently owned and managed football franchises.  See id. at 196.  By contrast, Copperweld and its progeny address wholly owned subsidiaries of a single corporate entity.  The factors examined in American Needle are simply irrelevant when analyzing antitrust claims against wholly owned subsidiaries.  See Gonzalez-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 249 (1st Cir. 2012) (distinguishing American Needle on this basis and extending Copperweld to bar conspiracy claims against a corporate parent's wholly owned subsidiaries); see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 847 F.3d 1221, 1233 (10th Cir. 2017) (extending Copperweld to claims against wholly owned subsidiaries, noting that "every circuit to address the question . . . [has] held that Copperweld's 'rationale and underlying policy apply with equal force to sister corporations that are wholly owned subsidiaries of the same parent,'" citing cases from the First, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits).

Because wholly owned subsidiaries cannot conspire with one another as a matter of law, Plaintiff's arguments that MBUSA acts as an "independent contractor" and does not have authority to make binding obligations for its affiliates, see Opp'n

14-15 (citing <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 123-24 (2014)),[2] or that MBUSA has failed to demonstrate that it is controlled by its ultimate parent, <u>see</u> <u>id.</u> at 15, are entirely misplaced.  The point of <u>Copperweld</u> is that because a corporation could just as easily structure its wholly owned subsidiaries as separate and independent ***divisions*** within a single corporation, the fact that the subsidiaries are separate ***corporations*** does not change the analysis.  <u>See</u> <u>Copperweld</u>, 467 U.S. at 770.  And as numerous courts have recognized, the same analysis applies to affiliates.[3]  In either case, the corporate entities are viewed as a single enterprise and cannot conspire with each other as a matter of law.  <u>Id.</u>; <u>see also</u> <u>Bell Atl.</u>, 849 F. Supp. at 706 (holding that once an affiliate relationship is established, there is no need to conduct a factual inquiry because affiliated corporations cannot conspire with one another as a matter of law).

### 2.    The First Amended Complaint Details Only Unilateral Conduct by MBFS That Is Not Actionable Under The Antitrust Laws.

Plaintiff's Cartwright Act claim also fails because claims under the Cartwright Act must be based on a "combination" between separate entities and not simply unilateral conduct, since businesses (like individuals) are free to determine with whom to conduct their affairs.  <u>See</u> <u>Chavez v. Whirlpool Corp.</u>, 93 Cal. App. 4th 363, 369-72 (2001) (sustaining demurrer and explaining that a manufacturer may unilaterally set the price to be charged by retailers).  Thus, unilateral boycotts, like

---

[2] <u>Bauman</u> addressed whether MBUSA could be considered an agent of a predecessor of Daimler AG for purposes of establishing personal jurisdiction over the latter.  <u>See</u> 571 U.S. at 123.  The case has nothing to do with any issues presented here.  The question here is whether MBUSA is a wholly owned subsidiary of Daimler AG, not its agent.

[3] For the same reason, the fact that MBUSA and MBFS are indirect subsidiaries is of no moment.  <u>See, e.g.</u>, <u>Lenox MacLaren</u>, 847 F.3d at 1233 (applying <u>Copperweld</u> in case involving both direct (parent) and indirect (grandparent) subsidiary relationships).

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

LA 52659014

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1   other forms of unilateral conduct, are not actionable at all, at least in the absence of

2   coercive conduct.  See id.; G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256, 268 (1983).

3        Here, the First Amended Complaint fails as a matter of law because it does not

4   allege *any* relevant conduct by MBUSA.  In particular, Plaintiff does not allege any

5   facts establishing why MBUSA's purported agreement would have been needed for

6   MBFS to change its policies regarding third-party payoffs in the first instance, or

7   what MBUSA—which neither holds nor services the leases at issue—might have

8   done to implement MBFS's policies.  In other words, the First Amended Complaint

9   alleges only *unilateral* (and entirely proper) conduct by MBFS.

10       Plaintiff's Opposition does not argue otherwise.[4]  Accordingly, Plaintiff fails

11   to state a claim against MBUSA as a matter of law.  Indeed, courts routinely dismiss

12   antitrust claims on this basis.  See, e.g., Kendall v. Visa U.S.A., Inc., 518 F.3d 1042,

13   1048 (9th Cir. 2008) (affirming dismissal of Sherman Act claims against banks

14   because allegation that banks "knowingly, intentionally and actively participated in

15   an individual capacity in the alleged scheme" was "nothing more than a conclusory

16   statement"); Stanislaus Food Prods. Co. v. USS-POSCO Indus., No. CV F09-

17   0560LJO SMS, 2010 WL 3521979, at *18 (E.D. Cal. Sept. 3, 2010) (dismissing

18   antitrust claims where "[t]he allegations fail to identify the conduct by each of the

19   defendants for which plaintiff seeks to hold them liable" and "do not identify what

20   defendant did what, and fail to identify the wrongful conduct by each defendant"); In

21

22   ―――――――――――――
    [4] At one point in the background section of its Opposition, Plaintiff purports to quote

23   paragraph 43 of the First Amended Complaint to the effect that "*MBUSA*
    intentionally impedes and frustrates the ability of the non-Mercedes franchise

24   dealerships from purchasing MBFS leased Mercedes vehicles as trade in vehicles."
    (Opp'n 8:19-21 (citing 1st Am. Compl. ¶ 43 (emphasis added)).)  However, in

25   addition to being entirely conclusory, this excerpt simply misquotes the cited
    paragraph, which actually alleges that "*MBFS* intentionally impedes and frustrates

26   the ability of the non-Mercedes franchise dealerships from purchasing MBFS leased
    Mercedes vehicles as trade in vehicles."  (1st Am. Compl. ¶ 43 (emphasis added).)

27   As stated in the Motion, the First Amended Complaint says nothing whatsoever
    about *MBUSA* preventing dealerships from acquiring vehicles.

28

1    re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1117 (N.D. Cal.

2    2008) (dismissing complaint where plaintiff failed to allege each defendant's role in

3    the alleged conspiracy).

4        **3.**     **Plaintiff Does Not Adequately Allege a "Substantially Adverse**

5            **Effect on Competition in the Relevant Market."**

6        Even if Plaintiff had adequately alleged an agreement between separate

7    entities capable of conspiring under the antitrust laws, Plaintiff does not adequately

8    allege a substantially adverse effect on competition in the relevant market.  As

9    explained in the Motion, vertical restraints on trade—as Plaintiff attempts to plead

10   here—are evaluated under a "rule of reason," which measures whether the

11   anticompetitive aspects of the restraint outweigh its procompetitive effects.  See

12   Marsh v. Anesthesia Servs. Med. Grp., Inc., 200 Cal. App. 4th 480, 493-95 (2011).

13   Critically, "it is plaintiff's burden to make the required showing of a 'substantially

14   adverse effect on competition in the relevant market.'"  Id. at 495 (citation and

15   internal quotation marks omitted).  Moreover, "where an antitrust plaintiff alleges

16   vertical restraints, facts must be pled showing 'some anticompetitive effect in the

17   larger, *interbrand* market.'"  Id. (emphasis added) (quoting Exxon Corp. v. Super.

18   Ct., 51 Cal. App. 4th 1672, 1681 (1997) (holding that the relevant market was all

19   gasoline sales, not the wholesale market for the franchisor's own brand)).  Here,

20   Plaintiff's Cartwright Act claim fails because Plaintiff identifies the relevant market

21   as previously owned Mercedes-Benz vehicles.  (See, e.g., 1st Am. Compl. ¶ 4.)

22   However, under Marsh and Exxon, the proper market for a "rule-of-reason" analysis

23   is the *interbrand* market.

24       Plaintiff's Opposition once again fails to address MBUSA's argument.  In

25   particular, although Plaintiff cites Exxon for the proposition that vertical restraints

26   are evaluated under a "rule of reason" analysis (Opp'n 16:22-23), Plaintiff ignores

27   Exxon's further holding—consistent with "[a] long line of federal cases"—"that

28   vertical restraints are permissible" in the absence of "a harmful effect on *interbrand*

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067–3086

-9-

1    competition." Exxon, 51 Cal. App. 4th at 1681 (emphasis added).  As explained by

2    the Exxon court, "[t]hese cases are consistent with the many cases holding that a

3    supplier cannot have a monopoly, normally, in its own product."  Id.

4         Here, Plaintiff improperly attempts to identify the relevant market not only as

5    limited to Mercedes-Benz vehicles or used Mercedes-Benz vehicles (both of which

6    would be improperly narrow under Marsh and Exxon), but an even smaller subset of

7    Mercedes-Benz vehicles currently being leased by MBFS.  That is the very antithesis

8    of an *interbrand* market as required to state a claim under the Cartwright Act.

9    Indeed, allowing an antitrust plaintiff to define the relevant market in this manner

10   would render the requirement to prove market power utterly meaningless, since

11   every seller or distributor of its own goods would necessarily exercise market power.

12        Moreover, even if Plaintiff had correctly identified the relevant market,

13   Plaintiff does not allege the requisite adverse effect because exclusive-dealing

14   arrangements are perfectly lawful under the antitrust laws.  Indeed, this is exactly

15   how dealership franchises are intended and expected to operate.  See Cont'l T. V.,

16   Inc. v. GTE Sylvania Inc., 433 U.S. 36, 54-55 (1977).  In short, manufacturers and

17   their affiliates are absolutely allowed to require that the vehicles they own be sold

18   through manufacturer-franchised dealerships.  Whether those vehicles are new from

19   the factory or off-lease vehicles ultimately makes no difference.

20   **B.    Plaintiff Similarly Fails to State a Claim Under the UCL.**

21        As set forth in the Motion, Plaintiff does not plausibly allege that it lost money

22   or property as a result of any conduct by MBUSA.  See Kwikset Corp. v. Super. Ct.,

23   51 Cal. 4th 310, 322 (2011) (holding that plaintiff must allege both "a loss or

24   deprivation of money or property sufficient to qualify as injury in fact" and "that

25   [the] economic injury was the result of . . . the unfair business practice . . . that is the

26   gravamen of the claim").  Plaintiff does not allege that it actually lost any money or

27   property on a particular transaction or due to any conduct by MBUSA, as is required

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1   to establish standing under the UCL.  Accordingly, Plaintiff's UCL claim should be

2   dismissed on this basis.

3          In addition, even if Plaintiff had alleged standing under the UCL—which it

4   has not—Plaintiff's UCL claim is premised on Defendants' purported antitrust

5   violations.[5]  "If the same conduct is alleged to be both an antitrust violation and an

6   'unfair' business act or practice for the same reason—because it unreasonably

7   restrains competition and harms consumers—the determination that the conduct is

8   not an unreasonable restraint of trade necessarily implies that the conduct is not

9   'unfair' . . . ."  City of San Jose v. Off. of the Comm'r of Baseball, 776 F.3d 686,

10  691-92 (9th Cir. 2015) (quoting Chavez, 93 Cal. App. 4th at 375).  A UCL claim

11  predicated on an antitrust violation "is therefore barred so long as [defendant]'s

12  activities are lawful under the antitrust laws."  Id.

13         In the Opposition, Plaintiff acknowledges that its claim for "unlawful"

14  conduct under the UCL is premised entirely on its antitrust claim.  (See Opp'n 19:19-

15  20:16.)  Thus, because Plaintiff's claim under the Cartwright Act fails as a matter of

16  law, Plaintiff's claim for "unlawful" business practices similarly fails.  In partial

17  response, Plaintiff argues that Cartwright Act violations also constitute restraints of

18  trade under California common law.  (Opp'n 20.)  However, the First Amended

19

20  ---

21  [5] As stated in the Motion, Plaintiff's original complaint asserted a single claim for
    violation of the UCL predicated on Defendants' purported violation of California
    Vehicle Code section 11709.4 and California Civil Code section 2987.  (See Compl.
22  ¶¶ 56, 60, 62, 74, ECF No. 1.)  Plaintiff subsequently filed the operative First
    Amended Complaint, replacing Plaintiff's original theory of liability with claims
23  based on purported violations of the Cartwright Act.  (See 1st Am. Compl. ¶¶ 67-77,
    90, 101, ECF No. 20.)  Although the First Amended Complaint contains scattered
24  references to consumers' and vehicles dealers' purported rights under sections
    11709.4 and 2987, neither section is cited in Plaintiff's current UCL claim.
25  Moreover, in the argument section of the Opposition, Plaintiff acknowledges that its
    UCL claim is "tethered" specifically to Business and Professions Code section
26  16720, i.e., the Cartwright Act, not sections 11709.4 or 2987.  (See Opp'n 23:2-10.)
    Regardless, the plain text of these sections establishes that neither Vehicle Code
27  section 11709.4 nor Civil Code section 2987 requires owners of leased vehicles to
    sell the vehicles to third parties like Plaintiff.
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

1  Complaint does not assert common-law restraint of trade as a basis for Plaintiff's

2  UCL claim.  Moreover, the Ninth Circuit has expressly rejected the argument that

3  claims for "unlawful" business practices under the UCL may be predicated solely on

4  common-law violations.  See Shroyer v. New Cingular Wireless Servs., Inc., 622

5  F.3d 1035, 1044 (9th Cir. 2010) ("Because [plaintiff] does not go beyond alleging a

6  violation of common law, he fails to state a claim under the unlawful prong of §

7  17200.").  Thus, Plaintiff's failure to state a claim under the Cartwright Act also

8  forecloses its claim for "unlawful" business practices under the UCL.

9       As for Plaintiff's claim under the "unfair" prong of the UCL, Plaintiff argues

10 that it has stated a claim under each of three different tests of unfairness—the

11 "balancing" test, the "tethering" test and the "Section 5" test.  (Opp'n 20-24.)  As an

12 initial matter, none of the "unfairness" tests cited by Plaintiff applies because those

13 tests apply only in consumer cases.  See In re Qualcomm Litig., No. 17-CV-00108-

14 GPC-MDD, 2017 WL 5985598, at *6 (S.D. Cal. Nov. 8, 2017).  Instead, as

15 explained by the Ninth Circuit, the correct test for "unfairness" between business-

16 competitors (including both direct competitors and other market participants) is the

17 Cel-Tech test.  Id. (citing Levitt v. Yelp! Inc., 765 F.3d 1123, 1136 (9th Cir. 2014)).

18 Under the Cel-Tech test, "the word 'unfair' . . . means conduct that threatens an

19 incipient violation of an antitrust law, or violates the policy or spirit of one of those

20 laws because its effects are comparable to or the same as a violation of the law, or

21 otherwise significantly threatens or harms competition."  Levitt, 765 F.3d at 1136

22 (quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163,

23 187 (1999)).  Here, as discussed in the Motion and above, MBFS's policy of

24 enforcing the anti-assignment clause in its vehicle leases does not implicate the letter

25 or spirit of the antitrust laws because exclusive dealing arrangements with franchised

26 dealerships do not adversely affect competition.  See Sylvania, 433 U.S. at 54-55.

27      In any event, because Plaintiff does not plausibly allege an unreasonable

28 restraint of trade by MBUSA, Plaintiff's claim for "unfair" business practices fails

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

-12-

LA 52659014

regardless of the particular test employed.  See Chavez, 93 Cal. App. 4th at 375 (declining to determine whether the Cel-Tech test applied because the conduct at issue was lawful under the antitrust laws); City of San Jose, 776 F.3d at 691 (rejecting UCL claim for "unfair" conduct predicated on restraint of trade without identifying which specific test for "unfairness" applied).

Accordingly, Plaintiff's UCL claim fails as a matter of law and should be dismissed.

### III.   CONCLUSION

For the foregoing reasons and for those set forth in the Motion, MBUSA respectfully requests that the Court grant the Motion in its entirety.

Dated:  April 28, 2022                Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
ARJUN P. RAO
DAVID W. MOON


By:_____ /s/ David W. Moon_____
                David W. Moon

Attorneys for Defendant
  MERCEDES-BENZ USA, LLC

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th Floor
Los Angeles, California 90067-3086

LA 52659014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, 18th floor
Los Angeles, California 90067-3086

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2022, a copy of the foregoing **REPLY IN SUPPORT OF MOTION OF DEFENDANT MERCEDES-BENZ USA, LLC TO DISMISS FIRST AMENDED COMPLAINT** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

_/s/ David W. Moon_
David W. Moon

LA 52659014