1  ERIK KEMP (State Bar No. 246196)
   ek@severson.com
2  ALISA A. GIVENTAL (State Bar No. 273551)
   aag@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
5  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
6
   Attorneys for Defendant
7  MERCEDES-BENZ FINANCIAL
   SERVICES USA LLC
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11 CALABASAS LUXURY                    Case No. 2:21-cv-08805
   MOTORCARS, INC.,
12                                     **REPLY MEMORANDUM IN**
              Plaintiff,               **SUPPORT OF MERCEDES-BENZ**
13                                     **FINANCIAL SERVICES USA LLC'S**
        vs.                            **MOTION TO DISMISS OR, IN THE**
14                                     **ALTERNATIVE, TO STRIKE**
   MERCEDES-BENZ USA, LLC;
15 MERCEDES-BENZ FINANCIAL             Date:   May 12, 2022
   SERVICES USA, LLC and DOES 1        Time:   10:00 a.m.
16 through 10,                         Ctrm.:  6D
                                       Judge:  Hon. Fernando M. Olguin
17            Defendant.

18

19

20

21

22

23

24

25

26

27

28

14000.0084/16111579.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................9

II. THE MOTION TO DISMISS SHOULD BE GRANTED ...................................10

  A. Calabasas Does Not Allege Any Violation of the Cartwright Act ...................10

    1. Calabasas Does Not and Cannot Allege Any Conspiracy Between MBFS and MBUSA ..................................................................10

    2. The Conspiracy Allegations Are Too Conclusory .........................................15

    3. Calabasas Alleges No Rule of Reason Violation .........................................16

    4. Calabasas Has No Right to Purchase Leased Vehicles From MBFS .......... 18

    5. Calabasas's Claims Are Barred by MBFS's Lease Terms .......................... 20

  B. Calabasas Alleges No UCL Claim ................................................................. 21

    1. MBFS Did Not Engage in Any Unlawful Conduct .......................................21

    2. MBFS Did Not Engage in Any Unfair Conduct ...........................................22

III. IN THE ALTERNATIVE, THE COURT SHOULD  STRIKE THE CLASS ALLEGATIONS ..................................................................24

IV. CONCLUSION ................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*49er Chevrolet, Inc. v. Gen. Motors Corp.*
  803 F.2d 1463 (9th Cir. 1986) ...................................................................19

*Advanced Health–Care Servs., Inc. v. Radford Cmty. Hosp.*
  910 F.2d 139 (4th Cir. 1990) .................................................................11, 13, 14

*Alig v. Quicken Loans Inc.*
  No. 5:12-CV-114, 2016 WL 10489897 (N.D.W. Va. June 2, 2016),
  *aff'd in part, vacated in part, remanded*, 990 F.3d 782 (4th Cir.
  2021), *cert. granted, judgment vacated sub nom. Rocket Mortg.,*
  *LLC v. Alig*, 142 S. Ct. 748, 211 L. Ed. 2d 468 (2022) .......................................12

*Am. Needle, Inc. v. Nat'l Football League*
  560 U.S. 183 (2010) .......................................................................13

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*
  890 F.3d 445 (3d Cir. 2018) ...................................................................21

*Arandell Corp. v. Centerpoint Energy Servs., Inc.*
  900 F.3d 623 (9th Cir. 2018) .................................................................12

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*
  204 Cal. App. 4th 1 (2012) ...............................................................10, 11, 14

*In re Auto. Antitrust Cases I & II*
  1 Cal. App. 5th 127 (2016) ...................................................................11

*Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*
  849 F. Supp. 702 (N.D. Cal. 1994) ...........................................................13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 127 S. Ct. 1955 (2007) .........................................................15

*Belton v. Comcast Cable Holdings, LLC*
  151 Cal. App. 4th 1224 (2007) ...............................................................23

*Bert G. Gianelli Distrib. Co. v. Beck & Co.*
  172 Cal. App. 3d 1020 (1985) ................................................................16

*Briseno v. ConAgra Foods, Inc.*
 844 F.3d 1121 (9th Cir. 2017) ....................................................................24, 25

*Broam v. Bogan*
 320 F.3d 1023 (9th Cir. 2003) ...........................................................................21

*Catholic Mut. Relief Soc. V. Superior Court*
 42 Cal. 4th 358 (2007) .......................................................................................20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
 20 Cal. 4th 163 (1999) .................................................................................23, 24

*In re Cipro Cases I & II*
 61 Cal. 4th 116 (2015) .......................................................................................16

*City of San Jose v. Off. of the Com'r of Baseball*
 776 F.3d 686 (9th Cir. 2015) .............................................................................23

*Copperweld Corp. v. Independence Tube Corp.*
 467 U.S. 752 (1984) .................................................................................. *passim*

*Cover v. Windsor Surry Co.*
 No. 14-CV-05262-WHO, 2017 WL 9837932 (N.D. Cal. July 24,
 2017) ...................................................................................................................25

*Daimler AG v. Bauman*
 571 U.S. 117 (2014) ...........................................................................................15

*de Dios v. Gerard Roof Prod., LLC*
 No. 518CV1163SJOFFMX, 2018 WL 6016952 (C.D. Cal. Sept. 4,
 2018) ...................................................................................................................15

*Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co.*
 833 F.2d 606 (6th Cir. 1987) .............................................................................11

*Drum v. San Fernando Valley Bar Assn.*
 182 Cal. App. 4th 247 (2010) ......................................................................19, 22

*Exxon Corp. v. Superior Court*
 51 Cal. App. 4th 1672 (1997) ......................................................16, 17, 19, 20

*Forsyth v. Humana, Inc.*
 114 F.3d 1467 (9th Cir. 1997), *overruled in part on a different
 ground in Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) ....................20

4

*Freeman v. San Diego Ass'n of Realtors*
   77 Cal. App. 4th 171 (1999) .............................................................................14

*General Tel. Co. v. Falcon*
   457 U.S. 147 (1982) .........................................................................................25

*Gonzalez-Maldonado v. MMM Healthcare, Inc.*
   693 F.3d 244 (1st Cir. 2012) ...........................................................................11

*Grasslands Water Ass'n v. Lucky Leven Land & Cattle Co.*
   112 Cal. App. 2d 776 (1952) ...........................................................................21

*Haghayeghi v. Guess?, Inc.*
No. 14CV00020 JAH-NLS, 2015 WL 1345302, at *6 (S.D. Cal. Mar. 24, 2015) ...25

*Hicks v. PGA Tour, Inc.*
   897 F.3d 1109 (9th Cir. 2018) ...................................................................17, 18

*Hood v. Tenneco Tex. Life Ins. Co.*
   739 F.2d 1012 (5th Cir. 1984) .........................................................................11

*Kendall v. Visa U.S.A., Inc.*
   518 F.3d 1042 (9th Cir. 2008) .........................................................................15

*Khrapunov v. Prosyankin*
   931 F.3d 922 (9th Cir. 2019) ...........................................................................13

*Kunert v. Mission Fin. Servs. Corp.*
   110 Cal. App. 4th 242 (2003) ..........................................................................21

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*
   847 F.3d 1221 (10th Cir. 2017) .................................................................11, 14

*Macmanus v. A. E. Realty Partners*
   146 Cal. App. 3d 275 (1983) ...........................................................................13

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*
   200 Cal. App. 4th 480 (2011) ....................................................................16, 17

*McMillan v. Connected Corp.*
   No. CV1003297MMMJCGX, 2011 WL 13213945 (C.D. Cal. May
   18, 2011) ..........................................................................................................22

*Nationwide Biweekly Admin., Inc. v. Superior Court*
   9 Cal. 5th 279 (2020) ......................................................................................23

*Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc.*
  671 F. Supp. 1525, 1544 (C.D. Cal. 1987) ...........................................13

*O'Connor v. Boeing N. Am., Inc*.
  184 F.R.D. 311 (C.D. Cal. 1998)............................................................ 25

*O.S.C. Corp. v. Apple Computer, Inc*.
  792 F.2d 1464 (9th Cir. 1986) ...............................................16

*People's Choice Wireless, Inc. v. Verizon Wireless*
  131 Cal. App. 4th 656 (2005) ...........................................17, 18, 19, 24

*Pepka v. Kohl's Dep't Stores, Inc*.
  No. CV164293MWFFFMX, 2016 WL 8919460 (C.D. Cal. Dec. 21,
  2016) ............................................................................................25

*Puerto Rico Pharm., Inc. v. Pfizer Corp*.
  296 F. Supp. 2d 69 (D.P.R. 2003) ........................................................14

*Quelimane Co. v. Stewart Title Guar. Co*.
  19 Cal. 4th 26 (1998) ............................................................................16

*In re Ray Dobbins Lincoln-Mercury, Inc*.
  604 F.Supp. 203 (W.D. Va. 1984) ................................................12, 13

*RLH Indus., Inc. v. SBC Commc'ns, Inc*.
  133 Cal. App. 4th 1277 (2005) .............................................................24

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc*.
  637 F.2d 1376 (9th Cir. 1981) .............................................................19

*Samsung Elecs. Co. v. Panasonic Corp*.
  747 F.3d 1199 (9th Cir. 2014) .............................................................16

*Santisas v. Goodin*
  17 Cal. 4th 599 (1998) .........................................................................17

*SC Manufactured Homes, Inc. v. Liebert*
  162 Cal. App. 4th 68 (2008) ................................................................19

*In re SFPP Right-Of-Way Claims*
  No. SACV 15-00718 JVS (DFMx) 2017 U.S. Dist. LEXIS 85973
  (C.D. Cal. May 23, 2017) ....................................................................25

*Shroyer v. New Cingular Wireless Servs., Inc*.
  622 F.3d 1035 (9th Cir. 2010) .............................................................22

14000.0084/16111579.2

6

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

*Siegel Transfer, Inc. v. Carrier Exp., Inc.*
  54 F.3d 1125 (3d Cir. 1995) ........................................................11, 14

*Swim v. Wilson*
  90 Cal. 126, 27 P. 33 (1891) ................................................................21

*Teradyne, Inc. v. Astronics Test Sys., Inc.*
  No. CV 20-2713-GW-SHKX, 2020 WL 8173024 (C.D. Cal. Nov. 6,
  2020) ..........................................................................................................22

*Ubaldi v. SLM Corp.*
  No. 11-01320 EDL, 2014 WL 1266783 (N.D. Cal. Mar. 24, 2014) ..................24

*Urena v. Earthgrains Distribution, LLC*
  No. SACV1600634CJCDFMX, 2017 WL 4786106 (C.D. Cal. July
  19, 2017) ..................................................................................................25

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ............................................................15

*Walker v. Life Ins. Co. of the Sw.*
  953 F.3d 624 (9th Cir. 2020) ..............................................................25

*Zuniga v. United Can Co.*
  812 F.2d 443 (9th Cir. 1987) ..............................................................12

**Statutes**

Cal. Civ. Code § 2330 ............................................................................21

Cal. Civ. Code § 2987(f) ......................................................................19

Cal. Civ. Proc. Code § 1858 ..............................................................20

Cartwright Act ................................................................................*passim*

Civil Code section 2987 ....................................................10, 19, 20

Sherman Act ........................................................................................16

Sherman Act § 1 ..................................................................................11

Unfair Competition Law ....................................................................10

Vehicle Code section 11709.4 ....................................................9, 19, 20

**Other Authorities**

Fed. R. Civ. P. 8(a) ...........................................................................................15

Fed. R. Civ. P. 23(b)(3)(D) ...............................................................................25

Restatement (Third) Of Agency § 2.02 (2006) ........................................21

Rule 8(a)(2) .......................................................................................................15

Rule 9(b) ............................................................................................................15

Rule 12(b)(6) .....................................................................................................21

Rule 23 ...............................................................................................................25

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

# I. INTRODUCTION

Plaintiff Calabasas Luxury Motorcars, Inc.'s complaint against defendant Mercedes-Benz Financial Services USA LLC ("MBFS") suffers from several independent flaws, any one of which is sufficient reason to grant MBFS's motion and dismiss this misguided suit. Calabasas has no convincing answer to any of these problems.

First, Calabasas's entire suit fails as it does not and cannot allege any conspiracy among economically independent actors. MBFS and co-defendant Mercedes-Benz USA LLC ("MBUSA") are affiliates that share a common parent and thus are legally incapable of conspiring with one another under the Cartwright Act. Contrary to Calabasas's argument, courts have repeatedly applied the reasoning of *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, 768-69 (1984) to bar claims against corporate affiliates like MBFS and MBUSA. Calabasas cites no pertinent authority supporting its contrary assertion. Nor does it allege any facts, as opposed to conclusions, supporting its conspiracy allegations.

Second, the complaint fails to allege an antitrust violation under the rule of reason. Vertical restraints are impermissible under the antitrust laws only if they adversely impact interbrand competition. Calabasas does not and cannot allege that MBFS's practice to not provide lease payoff quotes directly to third-party dealerships has any such impact. MBFS's practice plainly does not affect the market for used vehicles manufactured by competitors of Mercedes or for used Mercedes vehicles that were not previously leased by MBFS. At most, Calabasas has alleged only an impact on intrabrand competition—which does not suffice.

Third, absent narrow exceptions not applicable here, the antitrust laws do not prohibit a private party from choosing to do or not to do business with whomever it pleases. California law does not provide any "right" to purchase previously leased vehicles. MBFS's leases provides that the vehicles cannot be sold without MBFS's consent. Nothing in the two statutes Calabasas briefly mentions, Vehicle Code

section 11709.4 and Civil Code section 2987, modifies that contractual limitation or grants third-party dealerships a right to purchase leased vehicles.

Fourth, Calabasas's claim for violation of the Unfair Competition Law is derivative of its flawed Cartwright Act claim and so fails for the same reasons.  As MBFS did not violate the Cartwright Act, it also committed no "unlawful" practice under the UCL.  Nor was it "unfair" for MBFS to engage in conduct that the antitrust laws permit.

If the Court does not dismiss the complaint its entirety, it should strike the class allegations.  Contrary to Calabasas's argument, its proposed class is plainly a fail-safe class since determination of class membership turns on resolution of Calabasas's claims in the class members' favor.  There is no reason to defer resolution of this issue until discovery is completed as the defect is apparent from the face of Calabasas's complaint.

For these reasons and others detailed below, the Court should grant the motions and dismiss the complaint and strike the class allegations.

## II.  THE MOTION TO DISMISS SHOULD BE GRANTED

**A.    Calabasas Does Not Allege Any Violation of the Cartwright Act**

### 1.    Calabasas Does Not and Cannot Allege Any Conspiracy Between MBFS and MBUSA

As shown in MBFS's opening memorandum, Calabasas does not and cannot allege an "indispensable element" of any Cartwright Act claim—a conspiracy among economically independent actors.  *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 11 (2012).  MBFS and MBUSA are affiliates that a share a common corporate parent and hence are legally incapable of conspiring with one another under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984) and its progeny.[1]

---

[1] As Calabasas tacitly concedes, California cases follow *Copperweld* in cases

Attempting to avoid dismissal, Calabasas argues *Copperweld* applies only to conspiracies between a parent and its wholly owned subsidiaries, not alleged conspiracies between affiliates under common control.  Opp. 15-17.  Calabasas is wrong.

 Though *Copperweld* itself addressed a parent corporation and its wholly owned subsidiary, "[f]ederal courts have consistently applied *Copperweld* to preclude the finding of antitrust conspiracies within a corporate family . . . ."  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1233 n.4 (10th Cir. 2017) (citation omitted).  Multiple Courts of Appeals have expressly held that *Copperweld* applies equally to alleged conspiracies between corporate affiliates or "sister" companies like MBFS and MBUSA.  *See, e.g., Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 249 (1st Cir. 2012) ("The rationale and underlying policy [of Copperweld] apply with equal force to sister corporations that are wholly owned subsidiaries of the same parent."); *Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1133 (3d Cir. 1995) (same); *Advanced Health–Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990) ("Applying the Supreme Court's reasoning, we conclude that two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another for purposes of § 1 of the Sherman Act."); *Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co.*, 833 F.2d 606, 611 (6th Cir. 1987) (same); *Hood v. Tenneco Tex. Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984) (same).

Recently, the Ninth Circuit joined ranks with these courts, holding that "*Copperweld* supports the following rule: A wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity

---

applying the Cartwright Act.  *In re Auto. Antitrust Cases I & II*, 1 Cal. App. 5th 127, 155 (2016); *Asahi Kasei Pharma Corp.*, 204 Cal. App. 4th at 10.

14000.0084/16111579.2

11

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

1    with the purposes of the single 'economic unit' of which it is a part." *Arandell*

2    *Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 632 (9th Cir. 2018).

3          Here, as in *Arandell*, it is undisputed that MBFS and MBUSA are affiliates

4    that are wholly owned by the same parent:  Mercedes-Benz Group AG f/k/a Daimler

5    Group AG.  They are therefore a single economic unit that are legally incapable of

6    conspiring with one another under *Copperweld*.

7          Calabasas ignores *Arandell* and the other decisions cited above that have held

8    corporate affiliates are incapable of conspiring with one another.  It instead stakes

9    all on a few district court decisions that have held, contrary to the overwhelming

10   majority rule, that *Copperweld*'s reasoning does not extend to claims against sister

11   corporations.  *In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F.Supp. 203, 205

12   (W.D. Va. 1984).  *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2016 WL

13   10489897, at *24 (N.D.W. Va. June 2, 2016), *aff'd in part, vacated in part,*

14   *remanded*, 990 F.3d 782 (4th Cir. 2021), *cert. granted, judgment vacated sub nom.*

15   *Rocket Mortg., LLC v. Alig*, 142 S. Ct. 748, 211 L. Ed. 2d 468 (2022)

16         Calabasas's argument must be rejected as the Ninth Circuit has already held

17   that affiliated companies under common control are a single economic unit under

18   *Copperweld*'s reasoning.  *Arandell Corp.*, 900 F.3d at 630-31 (finding that

19   *Copperweld* "leads inescapably to the corollary conclusion that, for antitrust

20   purposes, it is legally impossible for firms within a single 'economic unit' to act

21   together in furtherance of the same price-fixing scheme for independent and distinct

22   purposes.").  This Court is bound by *Arandell* on this point; it may not choose to

23   follow out-of-Circuit authority to the contrary.  *Zuniga v. United Can Co.*, 812 F.2d

24   443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their

25   own circuit, and 'are not to resolve splits between circuits no matter how

26   egregiously in error they may feel their own circuit to be.'").

27         Moreover, *In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. 203, is no

28   longer good law even in the Fourth Circuit.  The Fourth Circuit's later decision in

*Advanced Health–Care Serv., Inc.*, 910 F.2d at 146-47, held that affiliated corporations could not conspire for antitrust purposes, thus effective overruling the *Ray Dobbins* district court's earlier contrary decision.  *Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 706 (N.D. Cal. 1994) (noting *Ray Dobbins* had been disapproved).

Calabasas cites no other convincing authority supporting the rule it asks this Court to adopt.  *Newport Components, Inc. v. NEC Home Elecs*. (U.S.A.), Inc., 671 F. Supp. 1525, 1544 (C.D. Cal. 1987) is inapposite.  *Newport* distinguished *Ray Dobbins* and declined to follow it because the parent corporation remained a party to the case.  *Newport* did not reach whether a conspiracy between two sister corporations was cognizable under the Cartwright Act.  "It is axiomatic that cases are not authority for issues not considered."  *Khrapunov v. Prosyankin*, 931 F.3d 922, 933 (9th Cir. 2019) (citing cases).

*Daimler AG v. Bauman*, 571 U.S. 117, 134-40 (2014) is even further afield. The Supreme Court there held only that California courts' jurisdiction over MBUSA did not confer jurisdiction on its corporate parent, Daimler AG.  *Bauman* did not address *Copperweld* or the antitrust law at all.  The snippets from MBUSA's distributor agreement that Calabasas quotes out of context are irrelevant.

*Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196-202 (2010) is similarly inapposite.  The Supreme Court there held that a licensing group formed by 32 separately owned NFL teams competing against one other for business was not a single economic unit.  By contrast, MBFS and MBUSA are not competitors, as are the independently owned NFL teams, but instead affiliated companies that are wholly owned by the same parent.  *Am. Needle* plainly is inapplicable under these facts.

Calabasas's reliance on *Macmanus v. A. E. Realty Partners*, 146 Cal. App. 3d 275, 287-88 (1983) is also unconvincing, as it was decided before the Supreme Court decided *Copperweld* in 1984.  Insofar as *Macmanus* suggested a corporation

13

1  could conspire with its wholly owned subsidiary, it is no longer viable. *See*

2  *Copperweld*, 467 U.S. at 759, 777 & n.18 (rejecting "single entity" test for

3  evaluating conspiracy allegations).

4      Finally, Calabasas urges that *Copperweld* is inapplicable because MBFS and

5  MBUSA are indirect subsidiaries of Mercedes-Benz Group AG, not direct

6  subsidiaries. Calabasas is wrong again. Opp. at 16-17.

7      It is undisputed that MBFS and MBUSA are both wholly owned indirect

8  subsidiaries of the same parent. They are a single economic unit legally incapable

9  of conspiring within one another. Courts have repeatedly applied *Copperweld* to bar

10  claims in similar circumstances involving corporate affiliates. *Lenox MacLaren*,

11  847 F.3d at 1233 (applying *Copperweld* in case involving both direct and indirect

12  subsidiary relationships); *Advanced Health-Care Servs., Inc*., 910 F.2d at 145

13  (holding *Copperweld* barred conspiracy claims against "a subsidiary of one

14  subsidiary and another subsidiary of the same parent corporation"); *Puerto Rico*

15  *Pharm., Inc. v. Pfizer Corp*., 296 F. Supp. 2d 69, 70 (D.P.R. 2003) (wholly owned

16  indirect subsidiaries could not conspire with one another under *Copperweld*); *see*

17  *also Siegel Transfer, Inc. v. Carrier Exp., Inc*., 54 F.3d 1125, 1133 (3d Cir. 1995)

18  ("The courts have not only applied *Copperweld* in cases involving de minimus

19  deviations from 100% ownership, but have also extended its principles to situations

20  where parental ownership was in the 80% to 91.9% range.") (citation omitted).

21  Calabasas fails to cite a single case supporting its contrary assertion that

22  *Copperweld* is inapplicable in these circumstances.

23      For all of these reasons, Calabasas does not and cannot allege a conspiracy

24  between two or more independent economic interests. The Court should dismiss the

25  complaint in its entirety and without leave to amend for that reason alone. *Asahi*

26  *Kasei Pharma Corp.*, 204 Cal. App. 4th at 11; *Freeman v. San Diego Ass'n of*

27  *Realtors*, 77 Cal. App. 4th 171, 193-94 (1999).

28

14000.0084/16111579.2

14

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

### 2.      The Conspiracy Allegations Are Too Conclusory

Even if *Copperweld* did not bar Calabasas's conspiracy claims against MBFS and MBUSA, the Cartwright Act claim should still be dismissed as the allegations of conspiracy are mere legal conclusions insufficient to satisfy Fed. R. Civ. P. 8(a).

"The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007).  At a minimum, "the complaint must allege facts such as a "specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin."  *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10).

Calabasas ignores *Twombly* and *Kendall* and urges such specificity is not required under California law.  Opp. 21-22.  But, "it is well-established that federal law governs the sufficiency of pleadings in federal courts."  *de Dios v. Gerard Roof Prod., LLC*, No. 518CV1163SJOFFMX, 2018 WL 6016952, at *3 (C.D. Cal. Sept. 4, 2018) (citing cases).  "The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 & 1103-04 (9th Cir. 2003) (applying Rule 9(b) to state law claims).

The complaint alleges no facts, as opposed to conclusions, suggesting any conspiracy or agreement between MBFS and MBUSA.  The sole alleged fact Calabasas highlights in its opposition is an email from a dealership stating (incorrectly) that MBFS would not accept payoffs from third-party dealers.  *See* Opp. 20, citing FAC, ¶ 45(e).  Even assuming the dealership's mistaken statement were true for purposes of this motion, it does not plausibly suggest any agreement between MBFS and MBUSA, as opposed to a unilateral policy decision.  As

14000.0084/16111579.2

15

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

Calabasas has alleged no other facts plausibly suggesting a conspiracy, the Cartwright Act claim should be dismissed for that additional reason.

### 3. Calabasas Alleges No Rule of Reason Violation

The Cartwright Act claim should also be dismissed as Calabasas has not alleged any unreasonable restraint of trade.

As Calabasas rightly concedes, *see* Opp. 23, the complaint attempts to allege only a vertical restraint of trade and thus is governed by the rule of reason. "[A]n antitrust plaintiff attacking vertical restraints cannot make out a case unless the plaintiff can show some anticompetitive effect in the larger, interbrand market." *Exxon Corp. v. Superior Court*, 51 Cal. App. 4th 1672, 1681 (1997); *see also O.S.C. Corp. v. Apple Computer, Inc*., 792 F.2d 1464, 1469 (9th Cir. 1986).

Contrary to Calabasas's argument, *see* Opp. 24-25, the requirement that the plaintiff plead facts suggesting the restraint of trade impacts interbrand competition is not limited to claims under the Sherman Act.  California courts have held the same rule applies to the Cartwright Act.  *Marsh v. Anesthesia Servs. Med. Grp., Inc*., 200 Cal. App. 4th 480, 495 (2011) ("where an antitrust plaintiff alleges vertical restraints, facts must be pled showing 'some anticompetitive effect in the larger, interbrand market.'"); *Exxon Corp.*, 51 Cal. App. 4th at 1682-83; *Bert G. Gianelli Distrib. Co. v. Beck & Co*., 172 Cal. App. 3d 1020, 1047 (1985).

None of the cases Calabasas cites holds to the contrary.  *See* Opp. 24-25. *Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 49 (1998) concerned an alleged horizontal restraint of trade among competing merchants and thus did not address what rules apply to pleading vertical restraints.  Calabasas's other cases stand only for the proposition that the Cartwright Act and Sherman Act are not completely coextensive.[2]  A "decision is not authority for everything said in the

---

[2] *Samsung Elecs. Co. v. Panasonic Corp*., 747 F.3d 1199, 1205 n.4 (9th Cir. 2014); *In re Cipro Cases I & II*, 61 Cal. 4th 116, 142 (2015).

14000.0084/16111579.2

16

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

1   court's opinion but only 'for the points actually involved and actually decided.'"

2   *Santisas v. Goodin*, 17 Cal. 4th 599, 620 (1998) (citation omitted).

3        Calabasas's complaint does not allege the existence of a single product

4   market in which MBFS's lease trade-in policy operates to restrain interbrand

5   competition.  Calabasas's opposition states the relevant market includes "all non-

6   Mercedes franchise vehicle dealerships in California whose right to accept MBFS

7   leased Mercedes vehicles as trade in vehicles and whose right to purchase MBFS

8   leased Mercedes vehicles has…or will in the future…be infringed upon and

9   violated, and who have or will suffer damage, as a result of Defendants' unfair,

10  unlawful, and anticompetitive conduct[.]"  Opp. 25, citing FAC, ¶ 63.

11       Calabasas's concession dooms its Cartwright Act claim. As stated above, the

12  antitrust laws prohibit vertical restraints only if they have an "anticompetitive effect

13  in the larger, interbrand market." *Exxon Corp.*, 51 Cal. App. 4th at 1681; *see also*

14  *Marsh*, 200 Cal. App. 4th at 495. The product market "must encompass the product

15  at issue as well as all economic substitutes for the product …." *Hicks v. PGA Tour,*

16  *Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018).

17       Calabasas's proposed market for previously leased MBFS vehicles is far too

18  narrow to satisfy this essential element of its Cartwright Act claim.  Calabasas

19  alleges no facts suggesting MBFS's trade-in policy impacts the larger market for

20  used vehicles, including brands other than Mercedes vehicles.

21       *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656,

22  659–60 (2005) is instructive.  There, a group of independent cellular phone dealers

23  sued Verizon for refusing to sell certain new cellular phone models to the

24  independent dealers during an extended holdback period.  The dealers alleged the

25  policy violated the Cartwright Act as it was designed to ensure that Verizon's retail

26  stores obtained the majority of sales for popular new models, thus rendering the

27  independent dealers unable to compete with Verizon stores. *Id.* at 659-62.  The

28  Court of Appeal affirmed the trial court's dismissal of the complaint, finding the

1  dealers had failed to allege any adverse impact on interbrand competition:

> The Independent Dealers complain about the diminution of "intrabrand" price competition, rather than the diminution of market competition. In other words, all they can say is that there is less price competition for Verizon's cellular telephones, not that there is less price competition among all the different cellular telephone brands. Given this, it cannot be said that the effect of Verizon's conduct is comparable to or the same as a violation of the antitrust laws. In fact, a logical deduction from the complaint is that even though the Independent Dealers cannot undercut Verizon's prices on popular new Verizon cellular telephone models during the holdback period, they can still undercut Verizon's prices with respect to the competing brand models acquired from manufacturers and other service providers.

*People's Choice Wireless, Inc.*, 131 Cal. App. 4th at 667.

Like the dealers in *People's Choice Wireless*, Calabasas at most alleges only that MBFS's trade-in policy impacted *intrabrand* competition—i.e., prices for and the availability of previously leased MBFS vehicles.  FAC, ¶¶ 54, 74.  Calabasas does not and cannot allege that MBFS's policy impacted interbrand competition for non-Mercedes vehicles.

Nor does or can Calabasas allege that MBFS has market power in the larger market for used or previously leased vehicles. As there are many other car manufacturers and auto finance companies, MBFS's share of the market for used vehicles or previously leased vehicles is plainly too small to allow it to exert market power.

In short, Calabasas's proposed market is "'facially unsustainable' because [it] fail[s] to include many 'reasonabl[y] interchangeab[le]' products." *Hicks*, 897 F.3d at 1123 (citation omitted).  Calabasas therefore cannot state any claim for violation of the Cartwright Act.

### 4.  Calabasas Has No Right to Purchase Leased Vehicles From MBFS

Calabasas also asserts in conclusory terms that it was improperly deprived of its supposed right to purchase previously leased MBFS vehicles.  Opp. 11-12. Calabasas is wrong again.

"[U]nless there is an exception, the right to refuse to deal remains sacrosanct.

1    Because that is true, the mere refusal to deal does not violate the spirit or policy of

2    antitrust law." *People's Choice Wireless, Inc*., 131 Cal. App. 4th at 667.  "Absent a

3    legal provision to the contrary, a private party generally may choose to do or not to

4    do business with whomever it pleases." *Drum v. San Fernando Valley Bar Assn*.,

5    182 Cal. App. 4th 247, 254 (2010); *see also SC Manufactured Homes, Inc. v.*

6    *Liebert*, 162 Cal. App. 4th 68, 83-84 (2008).

7         As Calabasas tacitly concedes, the antitrust laws do not prohibit franchise

8    agreements.  *49er Chevrolet, Inc. v. Gen. Motors Corp*., 803 F.2d 1463, 1468 (9th

9    Cir. 1986); *see also Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc*., 637

10   F.2d 1376, 1388 (9th Cir. 1981); *Exxon Corp.*, 51 Cal. App. 4th at 1686.  Calabasas

11   does not and cannot dispute that it is perfectly lawful for MBUSA to permit only its

12   franchised dealerships to sell new vehicles, thereby excluding non-franchised

13   dealerships from that market.

14        The supposed "restraint" of which Calabasas complains in this action is far

15   less significant.  Calabasas offers no convincing reason why it would be illegal for

16   MBFS to not provide lease payoffs directly to non-franchise dealers.

17        For the reasons stated in MBFS's opening memorandum, nothing in Vehicle

18   Code section 11709.4 or Civil Code section 2987 provides to the contrary.  Vehicle

19   Code section 11709.4 simply addresses the time by which a dealer must submit a

20   payoff request to the prior lienholder "when" a vehicle is traded in and subject to a

21   prior balance.  Cal. Veh. Code § 11709.4.  Civil Code section 2987 similarly

22   provides a sample formula for determining the maximum selling price of the leased

23   vehicle upon early termination "if" the vehicle is traded in prior to early

24   determination.  Cal. Civ. Code § 2987(f).

25        Each statute regulates certain aspects of the trade-in process if and when the

26   parties so agree to a trade-in.  Neither grants a third party dealer any right at all, let

27   alone an unconditional right to purchase previously leased vehicles.

28        Contrary to Calabasas's conclusory assertion, Opp. at 11, this interpretation

14000.0084/16111579.2

19

REPLY MEMORANDUM IN SUPPORT OF MERCEDES-BENZ FINANCIAL SERVICES
USA LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE

1   does not render either statute "nugatory."  The Legislature plainly can regulate the
2   circumstances under which vehicle trade-ins occur without establishing any right of
3   lessees or third-party dealers to agree to trade-ins absent the vehicle owner's
4   consent.  Calabasas points to no word or sentence in either section Vehicle Code
5   section 11709.4 or Civil Code section 2987 that is rendered null by so interpreting
6   the statute.

7        As explained in MBFS's opening memorandum, it is Calabasas's contrary
8   interpretation that violates the settled rules of statutory construction, as it improperly
9   inserts into the statutes an unexpressed legislative intention, *see* Cal. Civ. Proc.
10  Code § 1858, and ignores the rule that the statutes must interpreted in light of
11  existing common law.  *Catholic Mut. Relief Soc. V. Superior Court*, 42 Cal. 4th 358,
12  372 (2007).  Calabasas does not even address, much less have an answer for, either
13  problem.

14       **5.    Calabasas's Claims Are Barred by MBFS's Lease Terms**

15       As shown in MBFS's opening memorandum, Calabasas's claims also fail
16  because MBFS's leases prohibit the lessee from transferring any interest in the lease
17  without MBFS's written consent:  "You may not assign, sell, sublease or arrange an
18  assumption of your interests or rights under this lease or in the vehicle without our
19  written permission."  (Memo, Ex. A ¶ 25.)

20       Calabasas does not dispute that the prohibition on transfer of the vehicle or
21  lease without MBFS's consent is enforceable.  As the lessees voluntarily assented to
22  these contractual terms, Calabasas cannot attack them under the guise of the
23  antitrust laws.  *Exxon Corp.,* 51 Cal. App. 4th at 1686. *Forsyth v. Humana, Inc*., 114
24  F.3d 1467, 1476 (9th Cir. 1997), *overruled in part on a different ground in Lacey v.*
25  *Maricopa Cty*., 693 F.3d 896, 928 (9th Cir. 2012).

26       Calabasas's sole response to this argument is that it purchases vehicles
27  through a DMV Form that operates as a power of attorney, not as an assignment.
28  Calabasas's argument should be rejected, first and foremost, as the complaint

alleges no such facts.[3] *Broam v. Bogan*, 320 F.3d 1023, 1026, n. 2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not* look beyond the complaint, such as a memorandum in opposition to a defendant's motion to dismiss.").

Even overlooking that flaw, Calabasas is wrong. An agent appointed as power of attorney has no greater power than its principal. *See, e.g., Swim v. Wilson*, 90 Cal. 126, 128, 27 P. 33, 33 (1891); *Grasslands Water Ass'n v. Lucky Leven Land & Cattle Co.*, 112 Cal. App. 2d 776, 779 (1952); Cal. Civ. Code § 2330; Restatement (Third) Of Agency § 2.02 (2006).[4] Since MBFS's lessees cannot sell or assign an interest in vehicles that they do not own without MBFS's consent, any agent appointed pursuant to a power of attorney is similarly barred from doing so on its principal's behalf.

For this additional reason, Calabasas cannot allege any violation of the Cartwright Act.

**B.     Calabasas Alleges No UCL Claim**

**1.     MBFS Did Not Engage in Any Unlawful Conduct**

Calabasas fails to allege that MBFS committed any unlawful conduct in violation of the UCL.

Calabasas does not allege MBFS violated the Cartwright Act for the reasons stated above. Its derivative claim that MBFS's conduct was unlawful under the UCL thus fails for the same reasons. *Kunert v. Mission Fin. Servs. Corp.*, 110 Cal.

---

[3] In fact, Calabasas alleged in the original complaint that MBFS's practice prevented lessees from "transferring their Mercedes lease's purchase option …." Compl., ¶ 25.

[4] *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018) is inapposite. The Court there held only that an anti-assignment clause in a health care plan did not prevent a beneficiary from transferring his interest in a claim to an agent via power of attorney. The Court nowhere suggested the agent would thereby gain rights the principal did not himself possess.

App. 4th 242, 262–64 (2003); *Drum*, 182 Cal. App. 4th at 255–256.

Calabasas does not argue that MBFS violated any other law.  Instead, it argues only that even if it has not alleged MBFS violated the Cartwright Act, it has still alleged MBFS's conduct was "unlawful" because it engaged in an unlawful restraint of trade in violation of the common law.  Opp. 29.  Calabasas is wrong again.

"[A] common law violation such as breach of contract is insufficient …[,]" standing alone, to state a claim for violation of the UCL's unlawful prong.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).  Only if the conduct alleged to violate the common law also violates some other law is it independently actionable as an unlawful practice under the UCL.  Since Calabasas does not allege MBFS violated any other law, it cannot premise its claim under the UCL's "unlawful" prong based on a supposed violation of the common law.  *See, e.g., Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. CV 20-2713-GW-SHKX, 2020 WL 8173024, at *6 (C.D. Cal. Nov. 6, 2020) (dismissing UCL claim under "unlawful" prong based solely on common law claims); *McMillan v. Connected Corp.*, No. CV1003297MMMJCGX, 2011 WL 13213945, at *9 & n.56 (C.D. Cal. May 18, 2011) ("Because plaintiffs allege nothing more than a violation of common law, they fail to state a claim under the unlawful prong of § 17200.").

Finally, Calabasas has not alleged any violation of the common law. There is no common law rule requiring a vehicle lessor to provide lease payoff quotes directly to third-party dealerships. Instead, "a private party generally may choose to do or not to do business with whomever it pleases." *Drum*, 182 Cal. App. 4th at 254. Calabasas alleges no facts and cites no authority supporting its conclusory assertion that MBFS violated the common law.

### 2.    MBFS Did Not Engage in Any Unfair Conduct

Calabasas also fails to allege that MBFS engaged in any "unfair" conduct under the UCL.

Contrary to Calabasas's assertion, *see* Opp. 30-32, there is no uncertainty about the standard for determining unfairness in commercial cases alleging anticompetitive practices.  The California Supreme Court has expressly held that in the commercial context, the term "unfair" "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 187 (1999).  It is only in consumer cases that the California Supreme Court has not yet settled on a single test for evaluating unfairness, and the lower courts disagree on the appropriate test. *Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 303-04 (2020).

The *Cel-Tech* "unfairness" standard is substantially same as the test for evaluating whether there was an unreasonable restraint of trade in violation of the antitrust laws.  "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.  To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct."  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1240 (2007) (citation omitted); *see also City of San Jose v. Off. of the Com'r of Baseball*, 776 F.3d 686, 691-92 (9th Cir. 2015).

Calabasas fails to allege that MBFS's conduct was unfair under these rules. Calabasas does not and cannot allege that MBFS's lease trade-in policy had any adverse impact on interbrand competition for previously leased vehicles. At most, it alleges only an impact on intrabrand competition for previously leased MBFS vehicles.  Those allegations are insufficient to state any claim that MBFS's practices

23

were unfair under the UCL.  *See People's Choice Wireless, Inc*., 131 Cal. App. 4th at 668-72 (applying *Cel-Tech* test in a commercial context and affirming judgment on demurrer because the complaint did not allege that Verizon had a monopoly on the cell phone market or that its practices had any adverse impact on interbrand competition); *RLH Indus., Inc. v. SBC Commc'ns, Inc*., 133 Cal. App. 4th 1277, 1286 (2005).

## III.  IN THE ALTERNATIVE, THE COURT SHOULD STRIKE THE CLASS ALLEGATIONS

If the Court does not grant the motion to dismiss in its entirety, it should strike the class allegations because Calabasas has alleged an impermissible fail-safe class.

Contrary to Calabasas's unsupported argument, *see* Opp. at 32-33, its proposed class is plainly a fail-safe definition.  The trier of fact could not determine membership in Calabasas's class without deciding which dealerships' "rights" have been or will be "infringed upon and violated" and who have suffered or will suffer damages "as a result of Defendants' unfair, unlawful, and anticompetitive conduct …," *see* FAC, ¶ 63, thus adjudicating several merits issues in the class members' favor.  That is the defining characteristic of a fail-safe class.  "The problem with such a class is that 'once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class.' [Citation.]  That is not only 'palpably unfair to the defendant,' but it is also unmanageable because it is unclear in such cases to whom class notice should be sent."  *Ubaldi v. SLM Corp*., No. 11-01320 EDL, 2014 WL 1266783, at *6 (N.D. Cal. Mar. 24, 2014) (*citing Kamar v. RadioShack Corp*., 375 F. App'x 734, 736 (9th Cir. 2010)).

Citing *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1126 (9th Cir. 2017), Calabasas next argues that any administrative difficulties in determining whose rights were violated or what damages absent class members have suffered is

1    irrelevant to certification.  Calabasas is wrong again.  *Briseno* held only that Rule 23

2    does not impose a freestanding administrative feasibility requirement.  *Walker v.*

3    *Life Ins. Co. of the Sw*., 953 F.3d 624, 632-34 (9th Cir. 2020).  It did not dispense

4    with the rule that a class must be defined based on objective criteria so that

5    membership can be determined without regard to resolution of the merits. *O'Connor*

6    *v. Boeing N. Am., Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("A class definition

7    should be 'precise, objective, and presently ascertainable.'").

8            Also, as *Briseno*, itself, acknowledges, a district court may evaluate whether it

9    is feasible to identify class members when considering "the likely difficulties in

10   managing a class action" under Fed. R. Civ. P. 23(b)(3)(D).  *Briseno*, 844 F.3d at

11   1126, *In re SFPP Right-Of-Way Claims*, No. SACV 15-00718 JVS (DFMx), 2017

12   U.S. Dist. LEXIS 85973, at *39-40 (C.D. Cal. May 23, 2017); *Urena v. Earthgrains*

13   *Distribution, LLC*, No. SACV1600634CJCDFMX, 2017 WL 4786106, at *10 (C.D.

14   Cal. July 19, 2017); *Cover v. Windsor Surry Co*., No. 14-CV-05262-WHO, 2017

15   WL 9837932, at *8 (N.D. Cal. July 24, 2017).  It would plainly be unmanageable

16   for this Court to decide the merits of absent class members' claims before class

17   notice is mailed.  Calabasas does not, and cannot, propose any solution to this

18   obvious problem.

19           Contrary to Calabasas's next argument (Opp. at 33-34), the motion to strike is

20   not premature.  While some courts have declined to resolve challenges to class

21   allegations on the pleadings, *see Haghayeghi v. Guess?, Inc*., No. 14CV00020 JAH-

22   NLS, 2015 WL 1345302, at *6 (S.D. Cal. Mar. 24, 2015), there is no rule preventing

23   this Court from striking class allegations in an appropriate case.  "Sometimes the

24   issues are plain enough from the pleadings …" to determine whether a class may be

25   certified.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Pepka v.*

26   *Kohl's Dep't Stores, Inc*., No. CV164293MWFFFMX, 2016 WL 8919460, at *4

27   (C.D. Cal. Dec. 21, 2016).

28           That is the case here.  MBFS is not arguing that the class allegations are

defective because critical facts Calabasas may later uncover through discovery and investigation are missing from the complaint.  Instead, MBFS challenges the class allegations because it is facially apparent from the complaint that the proposed class definition is an impermissible fail-safe class.  No discovery is required to evaluate these legal arguments.

Calabasas has not explained how its proposed class could be redefined to cure its patent defects.  It has identified no other way to avoid the fail-safe problem.  Under these circumstances, the Court need not and should permit Calabasas to proceed to burdensome, expensive class discovery.  The Court should strike the class allegations at the outset of the case.

## IV.  CONCLUSION

For the reasons stated above and in MBFS's opening memorandum, the Court should dismiss the complaint and strike the class allegations.


DATED:  April 28, 2022                SEVERSON & WERSON
                                      A Professional Corporation


                                      By:  _____
                                                    */s/ Erik Kemp*
                                                     Erik Kemp

                                      Attorneys for Defendant MERCEDES-BENZ
                                      FINANCIAL SERVICES USA LLC