**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALABASAS LUXURY MOTORCARS, INC., | Case No. CV 21-8805 FMO (ASx) |
| Plaintiff, | |
| v. | **ORDER Re: PENDING MOTIONS** |
| MERCEDES-BENZ USA, LLC, et al., | |
| Defendants. | |

Having reviewed and considered all the briefing filed with respect to defendant Mercedes-Benz Financial Services USA LLC's ("MBFS") Motion to Dismiss [], (Dkt. 21, "MBFS Motion"), and defendant Mercedes-Benz USA, LLC's ("MBUSA") Motion to Dismiss [], (Dkt. 23, "MBUSA Motion"), the court finds that oral argument is not necessary to resolve the motions, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

On November 8, 2021, Calabasas Luxury Motorcars, Inc. ("plaintiff") filed a putative class action alleging that defendants MBFS and MBUSA (together, "defendants") violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"). (Dkt. 1, Complaint at ¶¶ 52-77). On December 31, 2021, plaintiff filed the operative First Amended Class Action

Complaint (Dkt. 20, "FAC"), adding a claim for violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, et seq. (See Dkt. 20, FAC at ¶¶ 67-77).

Plaintiff alleges that the COVID-19 pandemic led to a "confluence of low supply and high demand" for vehicles that "catapulted used and new car prices to record highs." (Dkt. 20, FAC at ¶¶ 23-24). As a result, "many lessees whose lease terms have either not yet expired or are expiring have found themselves in possession of vehicles whose market values . . . are significantly more than the amounts owed on their respective leases[.]" (Id. at ¶¶ 25-26). According to plaintiff, many lessees, "realizing that the value of their vehicles exceeds the payoff of their vehicles, have sought to either terminate their leases early and sell their vehicles, or sell their vehicles at the end of their leases rather th[a]n turning the vehicles over to MBFS[,]" which leases Mercedes vehicles in the United States. (Id. at ¶¶ 6, 27).

With this backdrop, plaintiff alleges that defendants adopted practices with the intent of "impeding and frustrating the ability of non-Mercedes franchise dealerships to accept MBFS leased Mercedes vehicles as trade in vehicles while simultaneously intentionally impeding and frustrating the ability of consumers to sell their MBFS leased Mercedes vehicles to non-Mercedes franchise dealerships." (Dkt. 20, FAC at ¶ 42). Specifically, plaintiff alleges that MBFS "refuses to provide payoff quotes to non-franchise dealers but will provide payoff quotes to franchise dealers[,]" making it "difficult if not impossible for non-franchise dealerships to structure deals relating to the acquisition of said vehicles[.]" (Id. at ¶ 45(a)). Also, MBFS "sends the title" of a paid-off used MBFS leased vehicle "to the lessee, not the entity paying the vehicle off" and only "cooperates with titling instructions if the acquiring dealership is a Mercedes franchise dealership[.]" (Id. at ¶ 45(b)). According to plaintiff, defendants "have colluded with each other" to engage in these practices to:

> (1) ensur[e] to the greatest degree possible that only Mercedes franchise dealerships have access to MBFS leased Mercedes vehicles after they are traded in or sold at the end of the lease term; and (2) ensur[e] Defendants and Mercedes franchise dealers capture as much profit as possible by Mercedes franchise dealerships getting these vehicles, designating the[m]

1       as 'Certified Pre-Owned' . . . to make more money, and then reselling the

2       vehicles to consumers who will finance the vehicles with MBFS.

3   (Id. at ¶ 53).

4                  **LEGAL STANDARD**

5         A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer

6   "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly

7   ("Twombly"), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal ("Iqbal"), 556 U.S.

8   662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A

9   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

10  the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

11  at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc.,

12  590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and

13  conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly,

14  550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla

15  Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) ("[T]he court is not required to accept

16  legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

17  drawn from the facts alleged. Nor is the court required to accept as true allegations that are

18  merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and

19  internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only

20  give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."

21  Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation

22  marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

23        In considering whether to dismiss a complaint, the court must accept the allegations of the

24  complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266,

25  268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading

26  party, and resolve all doubts in the pleader's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421,

27  89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Nevertheless,

28  dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal

1  theory or the absence of factual support for a cognizable legal theory.  See Mendiondo v.

2  Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

3  **DISCUSSION**

4  I.    CARTWRIGHT ACT CLAIM.

5         The court will grant defendants' Motions and dismiss plaintiff's Cartwright Act claim with

6  leave to amend.  In preparing the Second Amended Complaint, plaintiff should carefully evaluate

7  the issues discussed in this Order as well as the contentions set forth in defendants' Motions.  The

8  Cartwright Act "prohibits the combination of resources . . . for the purpose of restraining commerce

9  and preventing market competition[.]"  G.H.I.I. v. MTS, Inc., 147 Cal.App.3d 256, 266 (1983).  To

10  state a claim under the Cartwright Act, a plaintiff must allege "(1) the formation and operation of

11  the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting

12  from such act or acts."  Quelimane Co. v. Stewart Title Guar. Co., 19 Cal.4th 26, 47 (1998), as

13  modified (Sept. 23, 1998) (internal quotation marks omitted).  Additionally, "it is well settled that

14  a complaint for antitrust violations which fails to allege . . . concerted action by separate entities

15  maintaining separate and independent interests" is insufficient.  G.H.I.I., 147 Cal.App.3d at 266.

16        In Copperweld Corp. v. Indep. Tube Corp. 467 U.S. 752, 104 S.Ct. 2731 (1984), the

17  Supreme Court held that a corporation "and its wholly owned subsidiary [] are incapable of

18  conspiring with each other for purposes of § 1 of the Sherman Act."  Id. at 777, 104 S.Ct. at 2745.

19  Plaintiff alleges that MBUSA and MBFS – two wholly owned subsidiaries of Daimler AG[1] – violated

20

21

22

_____

23         [1]  MBFS filed a Request for Judicial Notice [], (Dkt. 22, "RJN"), attaching an excerpt of
Daimler AG's 2020 Annual Report listing Daimler AG's subsidiaries.  (See Dkt. 22, Exh. 1, at 247-
24  248) (showing that Daimler AG holds a 100% equity interest in both MBFS and MBUSA).  Plaintiff
did not oppose the RJN, (see, generally, Dkt.), and plaintiff does not contest that defendants are
25  wholly owned subsidiaries of Daimler AG.  (See, generally, Dkt. 33, Plaintiff's Opposition to
Defendant Mercedes-Benz USA's Motion to Dismiss ("Opp. to MBUSA Motion")); (Dkt. 34,
26  Plaintiff's Opposition to Defendant Mercedes-Benz Financial Services' Motion to Dismiss ("Opp.
to MBFS Motion")); see also Risto v. Screen Actors Guild - Am. Fed'n of Television & Radio
27  Artists, 2018 WL 7016345, *5 (C.D. Cal. 2018) (granting defendants' request for judicial notice of
annual reports because "annual reports are readily noticeable.").

the Cartwright Act[2] by "enter[ing] into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce[.]" (Dkt. 20, FAC at ¶ 68).  According to plaintiff, defendants are indirect subsidiaries of Daimler AG because they are "each owned by separate subsidiaries of Daimler[.]"  (Dkt. 33, Opp. to MBUSA Motion at 14-15); (Dkt. 34, Opp. to MBFS Motion at 17-18) (same).  Thus, plaintiff contends, "Copperweld does not apply to allegations of conspiracy which only allege the involvement of two subsidiaries and not the parent[.]"  (Dkt. 33, Opp. to MBUSA Motion at 13); (Dkt. 34, Opp. to MBFS Motion at 16) (same).  Plaintiff's contentions are unpersuasive.

While the Ninth Circuit has not directly addressed the issue of whether two subsidiaries – even indirect subsidiaries – can engage in anti-competitive conduct, every circuit court that has addressed the issue has concluded that the Copperweld rationale applies to subsidiaries wholly owned by the same parent.  See, e.g., Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 145 (4th Cir. 1990) (in addressing "whether concerted action between two subsidiaries of the same parent corporation, or more precisely, between a subsidiary of one subsidiary and another subsidiary of the same parent corporation, can lead to Sherman [Act] § 1 liability[,] . . . we conclude that two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another for purposes of § 1 of the Sherman Act."); Gonzalez-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 249 (1st Cir. 2012) (explaining that Copperweld's "rationale and underlying policy apply with equal force to sister corporations that are wholly owned subsidiaries of the same parent" and are therefore "a single economic unit" which "cannot violate section 1's conspiracy prohibition[.]"); Hood v. Tenneco Texas Life Ins. Co., 739 F.2d 1012, 1015 (5th Cir. 1984) ("Copperweld teaches us that because [the wholly owned subsidiaries] share a common purpose with Tenneco they cannot conspire with their parent in violation of the Sherman Act.  By the same token, neither can they conspire with one another.");

---

[2]   In general, "[t]he analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq., was modeled after the Sherman Act."  Cnty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001).

1   Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co., 833 F.2d 606, 611 (6th Cir. 1987) ("We agree

2   with the Fifth Circuit that Copperweld precludes a finding that two wholly-owned sibling

3   corporations can combine for the purposes of section 1 [of the Sherman Act].").  As a court in the

4   Northern District of California stated in a case involving one "wholly-owned subsidiary of Hitachi"

5   and another "wholly-owned subsidiary of Hitachi Data Holding Company, which is 80% owned by

6   Hitachi[,]" sister subsidiaries and the parent corporation "all act pursuant to the same interests and

7   goals: the distribution of Hitachi's products.  Two sister subsidiaries of the same parent over which

8   the parent has legal control are legally incapable of conspiring in violation of § 1 [of the Sherman

9   Act] for the same reasons Copperweld found that a parent and its wholly-owned subsidiary could

10  not conspire."  Bell Atl. Bus. Sys. Servs. v. Hitachi Data Sys. Corp. ("Bell Atlantic"), 849 F.Supp.

11  702, 707 (N.D. Cal. 1994).[3]

12          The court is also unpersuaded that plaintiff can allege an antitrust violation in a market

13  limited solely to "MBFS leased Mercedes vehicles."  (Dkt. 20, FAC at ¶ 58).  Plaintiff contends that

14  the challenged conduct constitutes a vertical restraint of trade.  (Dkt. 33, Opp. to MBUSA Motion

15  at 16).  The term "vertical restraint" refers to a "combination[] of persons at different levels of the

16  market structure, e.g., manufacturers and distributors" as opposed to a horizontal restraint, which

17  involves "an agreement between competitors at the same level of the market structure."  United

18  States v. Topco Assocs., Inc., 405 U.S. 596, 608, 92 S.Ct. 1126, 1133 (1972).

19          A vertical restraint of trade is analyzed under the rule of reason.  Flagship Theatres of Palm

20  Desert, LLC v. Century Theatres, Inc., 55 Cal.App.5th 381, 406 (2020) ("The California Supreme

21  Court has not yet addressed the general treatment of vertical restraints under the Cartwright Act[.]

22  . . .  But California Courts of Appeal generally analyze vertical restraints under the rule of

23  reason.").  "[I]t is the plaintiff's burden to show that the challenged vertical restraint had a

24

25          [3] The court is not convinced by plaintiff's reliance on In re Ray Dobbins Lincoln-Mercury,
    Inc. v. Ford Motor Co. ("Ray Dobbins"), 604 F.Supp.203 (W.D. Va.1984).  As the court in Bell
26  Atlantic noted, "the Fourth Circuit subsequently disapproved th[e Ray Dobbins] decision with its
    decision in Advanced Health-Care Serv[s], Inc.[]."  Bell Atlantic, 849 F.Supp. at 706; see also
27  Advanced Health-Care Servs., Inc., 910 F.2d at 145. For the same reason, the court is
    unpersuaded by various other cases plaintiff cites which rely on Ray Dobbins.  (See Dkt. 34, Opp.
28  to MBFS Motion at 15-16).

substantially adverse effect on competition in the relevant market, and thereby harms competition more than promotes it." <u>Ben-E-Lect v. Anthem Blue Cross Life & Health Ins. Co.</u>, 51 Cal.App.5th 867, 873 (2020), <u>as modified on denial of reh'g</u> (July 22, 2020); <u>see</u> <u>Exxon Corp. v. Super. Ct.</u>, 51 Cal.App.4th 1672, 1680-81 (1997) ("Vertical non-price restraints are tested under the rule of reason; that is, the plaintiff must prove that the restraint had an anticompetitive effect in the relevant market in order to prevail[.]"). However, "an antitrust plaintiff attacking vertical restraints cannot make out a case unless the plaintiff can show some anti-competitive effect in the larger, interbrand market." <u>Exxon Corp.</u>, 51 Cal.App.4th at 1681 (noting the "long line of federal cases stand[ing] for the general proposition that vertical restraints are permissible unless a harmful effect on interbrand competition and an anticompetitive purpose be shown[,]" which is "consistent with the many cases holding that a supplier cannot have a monopoly, normally, in its own product.").

Here, the FAC deals extensively with defendants' alleged anticompetitive behavior with regard to used MBFS leased vehicles,[4] but offers only generalized allegations regarding the interbrand market. (<u>See</u>, <u>e.g.</u>, Dkt. 20, FAC at ¶¶ 6, 44) ("As a result of Defendants' unlawful conduct, Plaintiff and other members of the class have paid artificially inflated prices for used vehicles"; "Defendants and Mercedes franchise dealerships thus have intentionally exerted unlawful control over the market, thereby harming and interfering with the marketplace for used vehicles."). In response to defendants' argument that plaintiff "alleges no facts suggesting MBFS's trade-in policy impacts the larger market for used vehicles, including brands other than Mercedes

---

[4]  (<u>See</u>, <u>e.g.</u>, Dkt. 20, FAC at ¶¶ 3,4, 7, 8, 46) ("Defendants have conspired in an attempt to eliminate the competition faced by Mercedes franchise dealerships with regard to the purchase and sale of used Mercedes vehicles"; "Defendants have placed these artificial and anticompetitive restrictions on the used vehicle market for Mercedes vehicles in order to ensure that Defendants, and their franchise dealerships, maintain dominance over the entire market for used Mercedes vehicles"; "Defendants are restraining and attempting to prevent competition within the secondary market for the purchase, sale, and trade in of used Mercedes vehicles"; "[i]n seizing control over the secondary market for Mercedes vehicles wherein the lessor is [MBFS], Defendants have thwarted Plaintiff and other dealers' ability to enter or trade in this market"; "[b]y keeping Mercedes vehicles on the 'Mercedes Merry-go-Round,' Defendants are not only preventing consumers from selling their vehicles to non-Mercedes franchise dealerships, but Defendants are also preventing dealerships, such as Plaintiff, from exercising their rights to purchase these leased vehicles as trade in vehicles.").

vehicles[,]" (Dkt. 21, MBFS Motion at 23), plaintiff asserts that "the relevant product market consists of *all non-Mercedes franchise vehicle dealerships in California*[.]" (Dkt. 34, Opp. to MBFS Motion at 25) (emphasis in original); (Dkt. 34, Opp. to MBUSA Motion at 17) (same). But there are no allegations in the FAC that identify harm to the interbrand market. (<u>See</u>, <u>generally</u>, Dkt. 20, FAC). And plaintiff cannot state a Cartwright Act without identifying harm to the interbrand market.[5] <u>See</u> <u>Exxon Corp.</u>, 51 Cal.App.4th at 1681.

## II.   UCL CLAIM.

To the extent that plaintiff's UCL claim is predicated on alleged violations of the Cartwright Act, (<u>see</u> Dkt. 20, FAC at ¶ 88), it follows that plaintiff has failed to sufficiently allege a violation of the UCL.  <u>See</u>, <u>e.g.</u>, <u>Jones v. Micron Tech. Inc.</u>, 400 F.Supp.3d 897, 923 (N.D. Cal. 2019) ("Plaintiffs concede their UCL claim is based only upon Defendants' unlawful anticompetitive behavior.  Because the Sherman Act and Cartwright Act violations are insufficiently pled, it follows that Plaintiffs have failed to sufficiently plead a violation of the UCL."); <u>Persian Gulf Inc. v. BP W. Coast Prod. LLC</u>, 2016 WL 4574357, *6 (S.D. Cal. 2016) ("The UCL claim is entirely derivative of the Cartwright Act claim.  Accordingly, as Plaintiff failed to plead a plausible antitrust claim, the motion to dismiss the UCL claim is granted as well."); <u>City of San Jose v. Off. of the Com'r of Baseball</u>, 776 F.3d 686, 691-92 (9th Cir. 2015) ("[U]nder California law, if the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason – because it unreasonably restrains competition and harms consumers – the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not

---

[5] Even if other companies – due to the "unprecedented demand for vehicles[,]" (Dkt. 20, FAC at ¶ 25) – were to adopt defendants' leasing practices to try to restrict non-franchise dealer trade-ins, the antitrust laws would not prohibit such parallel conduct by independently motivated, profit-seeking firms.  <u>See</u> <u>Twombly</u>, 550 U.S. at 556-57, 127 S.Ct. at 1966 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); <u>In re Musical Instruments & Equip. Antitrust Litig.</u>, 798 F.3d 1186, 1193 (9th Cir. 2015) ("Under <u>Twombly</u>, parallel conduct, such as competitors adopting similar policies around the same time in response to similar market conditions, may constitute circumstantial evidence of anticompetitive behavior.  But mere allegations of parallel conduct – even consciously parallel conduct – are insufficient to state a claim under § 1 [of the Sherman Act].") (internal citation omitted).

1  'unfair' toward consumers.") (internal quotation marks omitted); Reilly v. Apple Inc., 2022 WL

2  74162, *9 (N.D. Cal. 2022) ("To the extent the claim is derivative of Plaintiff's allegations of

3  antitrust violations, the UCL claim falls with those claims.").

4       However, to the extent plaintiff premises its UCL claim on the violation of some other

5  statute, such as California Vehicle Code § 11709.4, (see Dkt. 20, FAC at ¶¶ 36-38) or California

6  Civil Code § 2987, (see Dkt. 20, FAC at ¶¶ 39-41), the Motions are denied.  See, e.g., Cel-Tech

7  Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180-81 (1999) (describing the

8  UCL's scope as "broad" and noting that, "[b]y proscribing any unlawful business practice, Bus. &

9  Prof. Code, § 17200, borrows violations of other laws and treats them as unlawful practices that

10  the unfair competition law makes independently actionable.") (internal quotation marks omitted);

11  De La Torre v. CashCall, Inc., 854 F.3d 1082, 1085 (9th Cir. 2017) (same).

12  III.  CLASS ALLEGATIONS.

13       Finally, because "most courts decline to grant motions to strike class allegations prior to

14  motions for class certification," Waterbury v. A1 Solar Power Inc., 2016 WL 3166910, *4 (S.D. Cal.

15  2016), the court will not strike plaintiff's proposed class allegations.

16                                **CONCLUSION**

17       Based on the foregoing, IT IS ORDERED THAT:

18       1.    Defendants' Motions to Dismiss **(Document Nos. 21 and 23)** are **granted in part**

19  and **denied in part**.  Plaintiff's Cartwright Act and the UCL claim premised on a violation of the

20  Cartwright Act are dismissed with leave to amend.  The Motions are **denied** in all other respects.

21       2.    Plaintiff shall file a Second Amended Complaint, attempting to cure the deficiencies

22  set forth above, as well as the other alleged defects outlined in defendants' Motions, or a Notice

23  of Intent to Stand on First Amended Complaint ("Notice of Intent"), no later than **October 11, 2022**.

24  See WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1135-36 (9th Cir. 1997) ("Unless a plaintiff files

25  in writing a notice of intent not to file an amended complaint, such dismissal order is not an

26  appealable final decision.  In a typical case, filing of such notice gives the district court an

27  opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the

28  action, one that is clearly appealable.") (internal quotation marks omitted).  The court expects that

1    defendants will agree to any amendments that will or attempt to cure the alleged defects.

2           3.      The second amended complaint must be labeled "Second Amended Complaint," filed

3    in compliance with Local Rule 3-2 and contain the case number assigned to the case, i.e., Case

4    No. CV 21-8805 FMO (ASx).  In addition, plaintiff is informed that the court cannot refer to a prior

5    pleading in order to make its Second Amended Complaint complete.  Local Rule 15-2 requires that

6    an amended pleading be complete in and of itself without reference to any prior pleading.  This

7    is because, as a general rule, an amended pleading supersedes the original pleading.  See

8    Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established

9    in our circuit that an amended complaint supersedes the original, the latter being treated thereafter

10   as non-existent.   In other words, the original pleading no longer performs any function[.]'")

11   (citations and internal quotation marks omitted).

12          4.      Plaintiff is cautioned that failure to timely file a Second Amended Complaint or Notice

13   of Intent shall result in this action being dismissed without prejudice for failure to prosecute and

14   failure to comply with a court order.  See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S.

15   626, 629-30, 82 S.Ct. 1386, 1388 (1962); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th

16   Cir. 2004) ("The failure of the plaintiff eventually to respond to the court's ultimatum – either by

17   amending the complaint or by indicating to the court that it will not do so – is properly met with the

18   sanction of a Rule 41(b) dismissal."); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir. 1992)

19   (affirming dismissal for failure to file amended complaint as ordered by district court).

20          5.      Defendants shall file their answers to the Second Amended Complaint or a motion

21   pursuant to Fed. R. Civ. P. 12 no later than **October 25, 2022**.

22          6.      In the event defendants wish to file another motion to dismiss, then counsel for the

23   parties shall, on **November 1, 2022, at 10:00 a.m.**[6] meet and confer in person, via video, or

24   telephonically to discuss defendants' motions to dismiss.  Defendants' motions must include

25   copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire

26

27   ─────────────────────

28          [6]   Counsel may agree to meet and confer at another time without seeking court approval
     for such an agreement.

meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion).  Failure to include such a declaration will result in the motions being denied.

Dated this 30th day of September, 2022.


_____
/s/
Fernando M. Olguin
United States District Judge